B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Flexible Funding Ltd. Liability Co. | **DEFENDANTS**<br>TOTEM FOREST PRODUCTS<br>INTERNATIONAL LLC DBA TOTEM MATS |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>See attachment | **ATTORNEYS** (If Known)<br>Jeffery D. Carruth<br>Weycer, Kaplan, Pulaski & Zuber, P.C.<br>3030 Matlock Rd., Suite 201<br>Arlington, TX 76015 |
|---|---|

| **PARTY** (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Plaintiff amends complaint to remove claim for unfair competition law. Amended complaint brings claims for turnover of estate property (11 USC section 542), avoidance of transfers (11 USC section 544), conversion, punitive damages, and restitution/unjust enrichment.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 1 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 2 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 4 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 75,000 and more |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Flexible Funding Ltd. Liability Co., et. al. | BANKRUPTCY CASE NO.<br>21-42215-11-mxm | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Fort Worth | NAME OF JUDGE<br>Mark X. Mullin |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Christopher D. Sullivan | | |
| DATE<br>February 28, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Christopher D. Sullivan | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**Attachment to Form 1040**

ATTORNEYS FOR PLAINTIFF


CHRISTOPHER D. SULLIVAN (CA State Bar No.148083)
(Admitted *Pro Hac Vice*)
ROXANNE BAHADURJI (CA State Bar No 290117)
(Admitted *Pro Hac Vice*)
**SULLIVAN BLACKBURN PRATT LLP**
456 Montgomery Street, Suite 900
San Francisco, CA  94104
Phone: (415) 691-4518
Email: csullivan@sullivanblackburn.com
          rbahadurji@sullivanblackburn.com


LANCE P. MARTIN (N.C. State Bar No. 027287)
(Admitted *Pro Hac Vice*)
**WARD AND SMITH, P.A.**
Post Office Box 2020
Asheville, NC  28802-2020
Phone: (828) 348-6070
E-mail:  lpm@wardandsmith.com

CHRISTOPHER D. SULLIVAN (CA State Bar No.148083)
(Admitted *Pro Hac Vice*)
ROXANNE BAHADURJI (CA State Bar No 290117)
(Admitted *Pro Hac Vice*)
**SULLIVAN BLACKBURN PRATT LLP**
456 Montgomery Street, Suite 900
San Francisco, CA  94104
Phone: (415) 691-4518
Email: csullivan@sullivanblackburn.com
        rbahadurji@sullivanblackburn.com

LANCE P. MARTIN (N.C. State Bar No. 027287)
(Admitted *Pro Hac Vice*)
**WARD AND SMITH, P.A.**
Post Office Box 2020
Asheville, NC  28802-2020
Phone: (828) 348-6070
E-mail:  lpm@wardandsmith.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FT. WORTH DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>FLEXIBLE FUNDING LTD. LIABILITY CO., *et. al.*,<br><br>        Debtors.<br>———————————————<br><br>FLEXIBLE FUNDING LTD. LIABILITY CO.,<br>        Plaintiff<br><br>        v.<br><br>TOTEM FOREST PRODUCTS INTERNATIONAL LLC DBA TOTEM MATS,<br>        Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 21-42215-11-mxm<br>Chapter 11<br><br>Adversary Proceeding No. 23-04014 |

### AMENDED COMPLAINT

Plaintiff Flexible Funding Ltd. Liability Co., complaining of Defendant Totem Forest Products International LLC dba Totem Mats ("Totem Mats" or "Defendant"), says and avers:

### PRELIMINARY STATEMENT

Flexible Funding is the largest creditor of Graham County Land Company ("GCLC"), a former debris removal company based in Graham County, North Carolina, and now in state court receivership in Graham County, North Carolina Superior Court, Civil Action No. 21-CVS-142.  Beginning in 2019, Flexible Funding financed essentially all of GCLC operations.  In return, Flexible had a first-priority security interest in all of GCLC's personal property assets.

In 2020, Defendant sold hardwood mats ("Mats") to GCLC for use as a temporary road surface on job sites.  Defendant did not finance or lease the Mats, did not have GCLC execute a security agreement, and did not retain an ownership or security interest in the Mats.  GCLC paid just under half of the purchase price.  When GCLC fell behind on its payments, Defendant re-purchased the Mats from GCLC in exchange for an account credit.  Defendant took this action with no notice to Plaintiff.  But when it did so, the Mats were subject to Plaintiff's perfected security interest and Plaintiff had a superior right to the Mats.  When GCLC defaulted on its obligations to Plaintiff, Plaintiff could not repossess the Mats because Defendant had converted them in violation of Plaintiff's security interest.

In this adversary proceeding, Flexible Funding seeks turnover of estate property or a money judgment against Defendant for conversion and voidable transactions.

## STATEMENT OF JURISDICTION AND VENUE

1.      This adversary proceeding arises out of and relates to bankruptcy case number 21-42215-11-mxm entitled *In re Flexible Funding Ltd. Liability Co.*, *et. al.* commenced on September 19, 2021 ("Petition Date") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division under Chapter 11 of the Bankruptcy Code ("Bankruptcy Case").

2.      This is an action brought under Fed. R. Bankr. P. 7001(a)(1) and (9) to recovery money or property of the estate pursuant to 11 U.S.C. § 547 and 550.

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(A), and (O), and the Court can and should enter a final judgment. To the extent that certain claims are determined to be non-core matters, this Court has authority to hear and determine those non-core claims, because the core aspects of this adversary proceeding are heavily predominant and noncore aspects are related to these claims, and Plaintiff consents to this Court's entry of final orders or judgment thereon.

4.      This Court also has personal jurisdiction over the Defendant herein, because the Defendant is subject to nationwide service of process under Federal Rules of Bankruptcy Procedure 7004 and has a "constitutionally sufficient relationship" with the forum on account of its organization and operation within the United States, as alleged *infra*. *Double Eagle Energy Services, L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019).

5.      Venue also properly lies in this judicial district, in that this civil proceeding arises under Title 11 of the United States Code as provided in 28 U.S.C. § 1409.

## THE PARTIES

6.      Plaintiff Flexible Funding Ltd. Liability Co. ("Plaintiff" or "Flexible Funding") is a limited liability company organized and existing under the

laws of California with a principal office in Texas.

7.    Plaintiff, along with Instapay Flexible, LCC, are the Liquidating Debtors in the Bankruptcy Case, as set forth in the Amended Chapter 11 Joint Plan of Reorganization confirmed by the Court on July 13, 2022.

8.    Plaintiff is managed and administered by the Plan Administrator, Solution Advisors, LLC.

9.    Totem Forest Products International LLC is a limited liability company registered in the state of Oregon.

## FACTUAL BACKGROUND

10.   Plaintiff incorporates by reference all previous allegations.

11.   Graham County Land Company, L.L.C. ("GCLC") was a debris removal company based in Graham County, North Carolina.  It contracted with state agencies like the North Carolina, South Carolina, and Georgia Departments of Transportation to provide land clearing and tree and debris removal.  GCLC also contracted with private entities to perform similar services.

12.   Flexible Funding began to provide accounts receivable financing to GCLC in July 2019, after receiving assignments of factoring and security documents from their previous factor, First Bank & Trust, doing business as FirstLine Funding Group.

13.   Flexible Funding provided financing to GCLC under various documents, including an Amended and Restated Accounts Receivable Purchase Agreement ("Factoring Agreement").  Copy attached as Exhibit A and incorporated by reference.

14.   Under the Factoring Agreement, GCLC granted Flexible Funding a lien and security interest in, amongst other things, all of GCLC's inventory, chattel paper, accounts (including any cash and non-cash proceeds), equipment, instruments, receivables, inventory, and general intangibles, whether any of the foregoing is owned now or acquired later, or now existing or hereafter arising; all records of any kind

relating to any of the foregoing ("GCLC Collateral").

15.    Flexible Funding perfected its security interest in the GCLC Collateral by filing UCC-1 Financing Statements with the North Carolina Secretary of State on July 23, 2019.  Copy attached as Exhibit B and incorporated by reference.

16.    Between January 9, 2020 and March 31, 2020, Totem sold 4,997 hardwood mats ("Mats") to GCLC.

17.    The sales are represented by seven invoices bearing Nos. 1641, 1658, 1664, 1695, 1697, 1710, and 1718.  Copies attached collectively as Exhibit C.

18.    Upon information and belief, these are the details of the Mats Totem sold to GCLC:

| Date | Invoice # | Amount | Quantity | Unit Price |
|------|-----------|--------|----------|------------|
| 01/09/20 | 1641 | $374,250 | 998 | $375.00 |
| 01/29/20 | 1658 | $393,212 | 998 | $394.00 |
| 01/31/20 | 1664 | ($375) | (1) | $375.00 |
| 03/10/20 | 1695 | $197,500 | 500 | $395.00 |
| 03/13/20 | 1697 | $206,000 | 500 | $412.00 |
| 03/25/20 | 1710 | $423,444 | 994 | $426.00 |
| 03/31/20 | 1718 | $429,408 | 1,008 | $426.00 |

19.    Totem and GCLC did not sign a written contract for the purchase of the Mats.

20.    GCLC did not execute any promissory note in favor of Totem for the purchase price of the Mats.

21.    GCLC did not execute a security agreement in favor of Totem.

22.    Totem did not file a UCC-1 financing statement listing the Mats as collateral and GCLC as the debtor.

23.    Totem did not lease the Mats to GCLC.

24.    Totem did not finance the purchase of the Mats to GCLC.

25.    Upon information and belief, the total sale price was $2,023,439.

26.    Totem delivered the Mats to GCLC for a job in South Carolina.

27.    Totem surrendered possession and ownership of the Mats to GCLC.

28.    The Mats became the personal property of GCLC.

29.    Flexible Funding's perfected security interest in GCLC Collateral attached to the Mats.

30.    Through funding from Flexible Funding, GCLC made payments to Totem for the Mats.

31.    Upon information and belief, GCLC paid Totem $964,587 as follows:

| Date | Check No. | Amount |
|------|-----------|--------|
| 02/14/20 | 000350 | $100,000 |
| 02/28/20 | 014375 | $50,000 |
| 03/18/20 | 014530 | $75,000 |
| 03/26/20 | 014593 | $100,000 |
| 04/06/20 | 014694 | $49,250 |
| 04/17/20 | 014941 | $100,000 |
| 05/01/20 | 014974 | $50,000 |
| 05/05/20 | 014993 | $50,000 |
| 05/11/20 | 015037 | $50,000 |
| 05/15/20 | 015106 | $50,000 |
| 05/22/20 | 015175 | $50,000 |
| 05/29/20 | 015218 | $50,000 |
| 06/18/20 | 015347 | $50,000 |
| 10/23/20 | Wire | $140,337 |

32.    In September 2020, when GCLC could not pay Totem in full, Totem's president, Trevor Sazarin, proposed that Totem purchase back the Mats from GCLC.

33.    The proposal is set forth in an email dated September 11, 2020

from Sazarin to Randy Jordan, president of GCLC.

34.     A copy of the email is attached as Exhibit D and incorporated by reference.

35.     In proposing to purchase the Mats back from GCLC, Totem acknowledged that GCLC owned the Mats.

36.     In the email, Sazarin further stated that GCLC, as the owner of the Mats, could try to sell them to a third party.  He wrote:  "If Graham is able to secure a buyer for the mats, Totem will handle the transaction directly and reduce the outstanding balance by any profit above the initial purchase price, less an agreed upon fee to cover additional finance charges."

37.     Totem did not notify Flexible Funding of the proposal.

38.     GCLC did not notify Flexible Funding of the proposal.

39.     Upon information and belief, Totem had actual knowledge of GCLC's financial obligations to Flexible Funding.

40.     Totem also had constructive knowledge of Flexible Funding's perfected security interest in the Mats.

41.     Flexible Funding's UCC-1 was a matter of public record on the North Carolina Secretary of State's website.

42.      GCLC returned the Mats to Totem without the knowledge or permission of Plaintiff.

43.     Totem took back the Mats from GCLC for a credit of $800,000 against the amount GCLC owed under the invoices.

44.     Totem did not repossess the Mats because it had no security interest in the Mats.

45.     Totem did not obtain a judgment against GCLC that would allow it to seize and sell the Mats to satisfy the judgment.

46.     Totem also drafted a Promissory Note in an amount equal to the account balance of $399,189 for GCLC to execute.

47.    A copy of the Promissory Note is attached as Exhibit E and incorporated by reference.

48.    The re-purchase was a private sale conducted with no notice to Flexible Funding.

49.    The sale was not in the ordinary course of business and, upon information and belief, was not for the fair market value of the Mats.

50.    Upon information and belief, as part of the re-purchase Totem prepared a bill of sale and sent it to GCLC.

51.    The $800,000 credit valued the Mats at $160 per mat, which, upon information and belief, was less than half the fair market value.

52.    Upon information and belief, the Mats had a value in excess of $1.2 million when Totem re-purchased them.

53.    No proceeds were remitted to Flexible Funding because Totem paid no funds to GCLC.

54.    Flexible Funding did not consent to the conversion of the Mats by Totem.

55.    Flexible Funding did not release its properly-perfected lien on the Mats.

56.    Totem re-purchased the Mats subject to Flexible Funding's security interest.

## FIRST CLAIM FOR RELIEF

### (Turnover of Property of the Estate - 11 USC § 542)

57.    Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

58.    Section 542(a) of the Bankruptcy Code provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless

such property is of inconsequential value or benefit to the estate."

59.    The Mats are property of the estate because Flexible Funding had a perfected security interest in them superior to the rights of Totem.

60.    Plaintiff can use the Mats, or their value, for the benefit of the estate and the Mats are of more than inconsequential value and benefit to the estate.

61.    Plaintiff can demand turnover of the Mats, or the value of the Mats at the time of conversion.

62.    Consequently, Defendant is liable to Flexible Funding for the value of the Mats at the time of conversion and the Court can order Defendant to account for the Mats and their value.

## SECOND CLAIM FOR RELIEF

### (Avoidance of Transfers - 11 USC § 544 and 550 and N.C. Gen. Stat. § 39-23.1 et seq.)

63.    Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

64.    Section 544(b) of the Bankruptcy Code allows Plaintiff to avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim.

65.    Section 550 of the Bankruptcy Code allows Plaintiff to step into the shoes of a creditor who has been harmed by the voidable transfer at issue to recover the value of the property.

66.    Flexible Funding filed for bankruptcy protection on September 19, 2021, Case Number 21-42215-mxm11.

67.    In Flexible Funding's bankruptcy case, 25 creditors filed claims in a total amount of $26,324,009.85.  A copy of the Claims Summary is attached as Exhibit F and incorporated by reference.  Of those claims, over $23 million are unsecured.  The creditors holding those claims qualify as triggering creditors.

68.    Flexible Funding's confirmed Joint Plan of Liquidation (with

Instapay Flexible, LLC) recognizes a Class 6 for Allowed General Unsecured Claims.

69.    These creditors and holders of allowed general unsecured claims satisfy the triggering creditor requirement of Section 544(b) and Section 550 of the Bankruptcy Code.

70.    Flexible Funding had a perfected security interest in the Mats.

71.    This perfected security interested constituted an interest of the debtor in property under Bankruptcy Code Section 544(b).

72.    The re-purchase of the Mats by Totem was a transfer of Flexible Funding's interest in property.

73.    As set forth herein, the re-purchase, or transfer, is voidable under state law causes of action for conversion, restitution, and unjust enrichment.

74.    Flexible Funding received no value, much less reasonably equivalent value, as a result of the transfer.

75.    Totem was the initial transferee of the Mats.

76.    Plaintiff is entitled to recover from Totem the value of the Mats transferred to Totem.

### THIRD CLAIM FOR RELIEF
### (Conversion)

77.    The previous allegations are re-alleged and incorporated by reference as if completely set forth.

78.    As to Defendant, Plaintiff sets forth the following claim for relief for conversion.

79.    Flexible Funding had a properly-perfected security interest in the Mats superior to Defendant.

80.    Totem's actions in re-purchasing the Mats for an account credit constituted conversion of Plaintiff's property.

81.    Because of the actions described, Defendant has wrongly, unlawfully, and without authorization assumed and exercised the right of ownership

over Plaintiff's property, for its own benefit and to the exclusion of Plaintiff's rights.

82.    Defendant's use of the property for its own benefit has excluded and prejudiced the rights of Plaintiff because the property is no longer owned or available for use by Plaintiff to offset GCLC's obligations to Plaintiff.

83.    Defendant's use of the property for its own benefit represents a conversion.

84.    Plaintiff has been damaged because of the conversion of the Mats.

85.    Plaintiff is entitled to judgment against Defendant in an amount over $75,000 and equal to the funds converted, plus interest, attorneys' fees, and such other amounts as permitted by law.

## FOURTH CLAIM FOR RELIEF
### (Punitive Damages)

86.    The previous allegations are re-alleged and incorporated by reference as if completely set forth.

87.    Plaintiff sets forth the following claim for relief against Defendant for punitive damages.

88.    The actions of Defendant were undertaken willfully, wantonly, and in reckless disregard to the rights of Plaintiff.

89.    Because of such willful, wonton, and/or reckless actions, Plaintiff may recover punitive damages from Defendant in an amount over $75,000.00.


## FIFTH CLAIM FOR RELIEF
### (Restitution / Unjust Enrichment)

90.    The previous allegations are re-alleged and incorporated by reference as if completely set forth.

91.    Plaintiff sets forth the following claim for relief for restitution and unjust enrichment.

92.    Plaintiff may have equitable relief to recover for the harm caused

by Defendant.

93.     Defendant re-purchased and took back the Mats when Flexible Funding had a perfected security interest in them.

94.     Defendant benefitted financially from taking back the Mats.

95.     Defendant has been unjustly enriched by taking back the Mats at the expense of Flexible Funding.

96.     Flexible Funding had and has an interest in the Mats superior to Defendant.

97.     Defendant, in equity and good conscience, should be compelled to reimburse Plaintiff for the benefits received, equal to the value of the Mats at the time of conversion, plus pre- and post-judgment interest, and costs and attorneys' fees as allowed by law.

98.     Plaintiff is entitled to a judgment against Defendant for damages arising from its unjust enrichment in an amount over $75,000.00, plus pre- and post-judgment interest, and costs and attorneys' fees as allowed by law.

**WHEREFORE**, Plaintiff prays the Court:

1.     On the First Claim for Relief, that the Court enter a turnover order under 11 U.S.C. § 542 and that Plaintiff is entitled to recover the value of the transfers to Defendant.

2.     On the Second Claim for Relief, that the Court enter an avoidance order under 11 U.S.C. § 544 and that Plaintiff is entitled to recover the value of the transfers to Defendant.

3.     On the Third Claim for Relief, Plaintiff have and recover from Defendant its actual, consequential, and incidental damages over $75,000.00, the specific amount to be proven.

4.     On the Fourth Claim for Relief, Plaintiff have and recover from Defendant punitive damages over $75,000.00.

5.     On the Fifth Claim for Relief, Plaintiff have and recover from Defendant for damages arising from its unjust enrichment in an amount over $75,000.00, plus pre- and post-judgment interest, and costs and attorneys' fees as allowed by law.

6.     Plaintiff have and recover from Defendant its costs and expenses in this litigation.

7.     Plaintiff have and recover such other and further relief as to the Court may seem just and proper.

DATED: April 28, 2023            Respectfully submitted,

/s/ *Christopher D. Sullivan*
Christopher D. Sullivan
(CA State Bar No.148083)
(Admitted *Pro Hac Vice*)

/s/ *Lance P. Martin*
Lance P. Martin
(N.C. State Bar No.:  027287)
(Admitted *Pro Hac Vice*)

# EXHIBIT A

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

## AMENDED AND RESTATED ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This **AMENDED AND RESTATED ACCOUNTS RECEIVABLE PURCHASE AGREEMENT** (this "*Agreement*") is dated as of August 8, 2019, but shall be effective as of July 22, 2019 (the "*Effective Date*"), by and between **FLEXIBLE FUNDING LTD. LIABILITY CO.**, a California limited liability company ("FLEXIBLE FUNDING"), with offices at One Embarcadero Center, Suite 1510, San Francisco, California 94111, and **GRAHAM COUNTY LAND COMPANY, L.L.C.**, a North Carolina limited liability company ( "GRAHAM COUNTY LAND COMPANY"), with offices at 750 Tallulah Road, Robbinsville, North Carolina 28711.

### RECITALS:

Pursuant to an Assignment and Consent Agreement dated July 22, 2019 between FIRST BANK & TRUST, dba "FirstLine Funding Group" (*"FirstLine"*), GRAHAM COUNTY LAND COMPANY and FLEXIBLE FUNDING, and the other agreements, documents and instruments executed and/or delivered in connection therewith (the "*Assignment Documents*"), FirstLine has assigned, and FLEXIBLE FUNDING has assumed, the factoring and security agreement dated May 24, 2017 between *FirstLine* and GRAHAM COUNTY LAND COMPANY (the "*Original Factoring Agreement*").

Pursuant to the terms of this Agreement FLEXIBLE FUNDING hereby agrees to amend and restate the *Original Factoring Agreement* in its entirety to, among other things, amend and revise the terms of the factoring facility in favor of GRAHAM COUNTY LAND COMPANY (as so amended and revised pursuant to the terms of this Agreement, the "*Factoring Facility*"), in connection with which FLEXIBLE FUNDING may purchase certain present and future *Accounts* that may result from services and sales provided by GRAHAM COUNTY LAND COMPANY ("*Accounts Receivable*") to GRAHAM COUNTY LAND COMPANY's customers (each, an "*Account Debtor*"), and to provide certain services to and for the benefit of GRAHAM COUNTY LAND COMPANY as more fully set forth and specified in this Agreement, including the administration of the *Accounts Receivable* of GRAHAM COUNTY LAND COMPANY as provided herein. This Agreement constitutes the sole understanding between the parties and modification may only be made by a written amendment executed by both parties.

### AGREEMENT:

### GOVERNING LAW; DEFINITIONS

1.      The laws of the State of California and the California Commercial Code shall govern the construction of this Agreement and the rights and duties of the parties hereunder, without reference to or application of any conflicts of laws principles that would apply the laws of any other jurisdiction. All capitalized terms contained herein shall have the meanings ascribed to such terms in the Recitals, above, in the body of this Agreement, in this paragraph 1, or if not defined in any of the foregoing, the meanings set forth in the Uniform Commercial Code adopted in the State of California ("*UCC*").

1.1     *"Advance"* means a payment of proceeds of the *Initial Purchase Payment* for any *Purchased Receivable* remitted by FLEXIBLE FUNDING to GRAHAM COUNTY LAND COMPANY pursuant to the provisions of this Agreement.

1.2     *"Collateral"* has the meaning ascribed to such term in paragraph 18 below.

1.3     *"Disputed Account"* means any *Account Receivable* that is subject to any claim by an *Account Debtor* against GRAHAM COUNTY LAND COMPANY, of any kind whatsoever, valid or invalid, that may reduce the amount collectible from such *Account Debtor* by FLEXIBLE FUNDING in respect of any *Purchased Receivable*, including any dispute or claim, *bona fide* or otherwise, as to price, terms, quantity, quality, delivery, or any cause or defense to payment of an *Account Receivable* whatsoever, and shall also include any *Account Receivable* that has not been approved by the *Account Debtor* within thirty (30) days from the date of the invoice upon which the *Account Receivable* is based, unless FLEXIBLE FUNDING is advised in writing by GRAHAM COUNTY LAND COMPANY to the contrary. FLEXIBLE FUNDING shall be under no obligation to determine or verify the *bona fides* or veracity of any claim, dispute or other allegation of an *Account Debtor* or GRAHAM COUNTY LAND COMPANY with respect to a *Disputed Account*.

1.4     *"Eligible Receivable"* shall mean each *Account Receivable* that is: (1) not over **90 days** unpaid; (2) not a *Disputed Account* or otherwise subject to any counterclaim, defense, dispute, right of setoff or recoupment by the *Account Debtor* or any other person; (3) not payable by an affiliate of GRAHAM COUNTY LAND COMPANY; (4) not subject to any lien, security interest or other encumbrance other than in favor of FLEXIBLE FUNDING; (5) not subject to assignment or transfer in favor of any person other than to FLEXIBLE FUNDING; (6) not payable by an *Account Debtor* that is insolvent, that has declared bankruptcy, that is subject to an involuntary bankruptcy proceeding, or that has commenced any proceeding under any federal, state or local law relating to liquidation, receivership, insolvency, reorganization, or otherwise affecting the rights of creditors generally; and (7) not disqualified by FLEXIBLE FUNDING for credit or other reason(s) in FLEXIBLE FUNDING's sole discretion.

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

1.5    *"General Release"* means a release, in form and content acceptable to FLEXIBLE FUNDING, pursuant to which GRAHAM COUNTY LAND COMPANY releases all claims, actions and causes of action against FLEXIBLE FUNDING, known or unknown, and deliverable in connection with the termination of this Agreement.

1.6    *"Initial Purchase Payment"* means an amount equal to **85%** of the net face amount of the invoice representing a *Purchased Receivable.*

1.7    *"Purchase Price"* for each Purchased Receivable means a sum equal to (a) the Initial Purchase Payment for such Purchased Receivable, plus (b) the Subsequent Purchase Payment for such Purchased Receivable.

1.8    *"Obligations"* means all present and future obligations owing by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING whether or not for the payment of money, including but not limited to the outstanding amount of all *Advances* hereunder, all fees, costs and expenses payable by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING pursuant to the terms hereof, and all other amounts payable by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING in connection herewith, whether direct or indirect, absolute or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original, renewed, or extended, whether arising before, during, or after the commencement of any bankruptcy case in which GRAHAM COUNTY LAND COMPANY is a Debtor, including but not limited to any obligations arising pursuant to letters of credit or acceptance transactions or any other financial accommodations.

1.9    *"Purchased Receivable"* means each *Eligible Receivable* purchased by FLEXIBLE FUNDING pursuant to the terms of this Agreement.

1.10    *"Reserve Account"* means a bookkeeping account FLEXIBLE FUNDING on the books of FLEXIBLE FUNDING representing an unpaid portion of the *Purchased Receivables*, and which will be applied to the *Obligations* as provided by the terms hereof and maintained by FLEXIBLE FUNDING to ensure GRAHAM COUNTY LAND COMPANY's performance with the provisions hereof.

1.11    *"Subsequent Purchase Payment"* means an amount equal to all collections actually received by FLEXIBLE FUNDING with respect to any *Purchased Receivable* in excess of the *Initial Purchase* Payment thereof, less the amount of all fees, costs and expenses payable by GRAHAM COUNTY LAND COMPANY hereunder applied to such collections, and less all other amounts payable by GRAHAM COUNTY LAND COMPANY hereunder applied to such collections pursuant to the terms of this Agreement. Each *Subsequent Purchase Payment* shall be applied to the outstanding *Obligations* at such times and in such amounts as provided in this Agreement.

## OFFER AND SALE OF ACCOUNTS RECEIVABLE

2.    At its election from time to time during the term of this Agreement, GRAHAM COUNTY LAND COMPANY agrees to offer for sale to FLEXIBLE FUNDING certain of its *Eligible Receivables* arising out of sales of goods, or services rendered, by GRAHAM COUNTY LAND COMPANY, and to sell to FLEXIBLE FUNDING on the terms set forth in this Agreement, such of the offered *Eligible Receivables* as FLEXIBLE FUNDING may accept for purchase in accordance with the terms hereof. Pursuant to the terms and conditions hereof, FLEXIBLE FUNDING shall have the absolute right to reject any or all offered *Accounts Receivable*, whether or not an *Eligible Receivable*, and whether or not FLEXIBLE FUNDING has previously purchased any *Account Receivable* of the same *Account Debtor* hereunder.

3.    Upon FLEXIBLE FUNDING's purchase of any *Account Receivable* pursuant to the terms hereof, GRAHAM COUNTY LAND COMPANY shall be deemed to have, and shall have, sold, transferred, assigned and otherwise conveyed to FLEXIBLE FUNDING, as a sale by GRAHAM COUNTY LAND COMPANY and a purchase by FLEXIBLE FUNDING, and not as security for any indebtedness or other obligation of GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING, all right, title and interest of GRAHAM COUNTY LAND COMPANY in and to each such *Purchased Receivable*, together with all related rights (but not obligations) of GRAHAM COUNTY LAND COMPANY with respect thereto, including all contract rights, guarantees, letters of credit, liens in favor of GRAHAM COUNTY LAND COMPANY, insurance and other agreements and arrangements of whatever character from time to time supporting or securing payment of such *Purchased Receivable*, and all right, title and interest of GRAHAM COUNTY LAND COMPANY in any related goods, including GRAHAM COUNTY LAND COMPANY's rights and remedies under Article 2, Part 7 of the UCC. The sale, transfer, assignment and conveyance of any *Purchased Receivable* to FLEXIBLE FUNDING does not constitute and is not intended to result in an assumption by FLEXIBLE FUNDING of any obligation of GRAHAM COUNTY LAND COMPANY or any other person in connection with the *Purchased Receivable* or related rights or under any agreement or instrument relating thereto. GRAHAM COUNTY LAND COMPANY agrees to execute and deliver such bills of sale, assignments, letters of credit, notices of assignment, financing statements (including continuation statements) under the UCC and other documents, and make such entries and markings in its books and records, and to take all such other actions (including the negotiation, assignment or transfer of negotiable documents, letters of credit or other instruments) as FLEXIBLE FUNDING may request to further evidence or protect the sales and assignments of *Purchased Receivables* and related rights to FLEXIBLE FUNDING hereunder, as well as FLEXIBLE FUNDING's interest in any goods and inventory returned to GRAHAM COUNTY LAND COMPANY in connection with any *Disputed Account*. After an *Account Receivable* has been purchased by FLEXIBLE FUNDING, GRAHAM COUNTY LAND COMPANY shall not have the right to vary the terms of sale set forth in the invoice relating to such *Purchased Receivable*, or

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

any other aspect of the *Purchased Receivable*, except in GRAHAM COUNTY LAND COMPANY's capacity as agent for FLEXIBLE FUNDING for purposes of collection of *Purchased Receivable* as may be required by FLEXIBLE FUNDING pursuant to the terms hereof, and then only with the prior written consent of FLEXIBLE FUNDING.

4.    GRAHAM COUNTY LAND COMPANY will provide FLEXIBLE FUNDING with title to all *Purchased Receivables* free and clear of all liens, charges, security interest or deemed trusts, will obtain such discharges or postponements from prior secured creditors as may be necessary to do so, and will ensure that the first use of any *Advance* by FLEXIBLE FUNDING will be to ensure that FLEXIBLE FUNDING receives title to each *Purchased Receivable* free and clear of all liens, charges, security interest or deemed trusts as required under this paragraph 4, including but not limited to paying all outstanding payroll and source deduction related liabilities of GRAHAM COUNTY LAND COMPANY. FLEXIBLE FUNDING may withhold the purchase of any *Eligible Receivable* and/or the *Initial Purchase Payment* of any *Eligible Receivable* until such time as the terms of this paragraph 4 have been complied with.

## ACCOUNTS MANAGEMENT

5.    Before execution of any agreement with an *Account Debtor* in connection with which GRAHAM COUNTY LAND COMPANY desires FLEXIBLE FUNDING to purchase any *Account Receivable* and provide services under this Agreement, GRAHAM COUNTY LAND COMPANY shall provide to FLEXIBLE FUNDING the *Account Debtor's* legal name, address, phone number, and other information that may be requested by FLEXIBLE FUNDING. FLEXIBLE FUNDING may conduct a credit investigation of each *Account Debtor* in FLEXIBLE FUNDING's sole discretion. In addition, FLEXIBLE FUNDING may notify GRAHAM COUNTY LAND COMPANY of such investigation and share information so received. FLEXIBLE FUNDING shall advise GRAHAM COUNTY LAND COMPANY of the acceptance or rejection of each *Account Debtor* submitted for the purchase of *Accounts Receivable*, and may establish a maximum credit limit for such *Account Debtor*, without waiving its right at any subsequent time to terminate or modify any such acceptance.

6.    GRAHAM COUNTY LAND COMPANY shall provide to FLEXIBLE FUNDING each week with the information described below in content and format acceptable to FLEXIBLE FUNDING (hereafter an "*Invoice Pack*"):

6.1    Detail of all outstanding *Accounts Receivable* (which may include, but not limited to, invoices, aging reports, spreadsheets, access to accounting programs, and/or access to certain servicer online portals);

6.2    Supporting information (which may include, but not limited to, signed timecards, timecard data or access, access to online portals identifying timecard information); and

6.3    A listing of all unpaid *Accounts Receivable*.

7.    After submission of an *Invoice Pack*, FLEXIBLE FUNDING shall provide to GRAHAM COUNTY LAND COMPANY a report (each, a "*Facility Report*") that captures the current state of the *Factoring Facility*: *e.g.*, the *Eligible Receivables* included in the most recent *Invoice Pack* purchased by FLEXIBLE FUNDING (in whole or in part), the current *Purchased Receivables* balance; new billings and new collections (since the prior *Invoice Pack*), the then-available amount of the *Factoring Facility*, the current request to purchase *Eligible Receivables* and fees, costs and other expenses payable by GRAHAM COUNTY LAND COMPANY at such time. GRAHAM COUNTY LAND COMPANY agrees that it shall have accepted all entries contained within a *Facilities Report* unless it shall have notified FLEXIBLE FUNDING of any dispute with any of the entries contained in such *Facility Report* within ten (10) days of receipt of such *Facility Report*.

8.    GRAHAM COUNTY LAND COMPANY agrees that all invoices to *Account Debtors* shall designate GRAHAM COUNTY LAND COMPANY as the named payee, with specific remittance instructions as FLEXIBLE FUNDING designates to GRAHAM COUNTY LAND COMPANY from time to time. Currently the designated address for receipt of physical payments (*e.g.*, checks, drafts, *etc.*) is P.O. Box 7064, San Francisco, CA 94120, and instructions for receipt of electronic payments (*e.g.*, wire transfers, ACH's, *etc.*) for the following FLEXIBLE FUNDING account: Bank Name: Wells Fargo Bank • ABA: 121000248 • Account Name: Flexible Funding • Account No: 4428952527 • Phone: 415-391-4320.

9.    The only address on invoices shall be the remittance address and/or electronic remittance address designated in paragraph 8 above. If any payment is received by GRAHAM COUNTY LAND COMPANY, either physically or electronically:

9.1    GRAHAM COUNTY LAND COMPANY shall hold such payment irrevocably in trust for FLEXIBLE FUNDING, separate and apart from GRAHAM COUNTY LAND COMPANY'S own funds;

9.2    GRAHAM COUNTY LAND COMPANY shall deliver such payment within one (1) business day to FLEXIBLE FUNDING in the identical form in which it was received (except for the endorsement or assignment of GRAHAM COUNTY LAND COMPANY where necessary);

9.3    GRAHAM COUNTY LAND COMPANY shall promptly notify the *Account Debtor* in writing to send future payments as set forth in paragraph 8 above.

10.    GRAHAM COUNTY LAND COMPANY shall execute all authorizations or other documents requested to establish and maintain FLEXIBLE FUNDING's authority to accept, endorse and deposit all *Account Debtor* remittances to the bank account of FLEXIBLE FUNDING. GRAHAM COUNTY LAND COMPANY hereby appoints FLEXIBLE FUNDING as its agent for

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

the purpose of executing all authorizations or other documents to establish and maintain FLEXIBLE FUNDING's authority to accept, endorse and deposit all electronic *Account Debtor* remittances (such as ACH) to the bank account of FLEXIBLE FUNDING.

11.   All funds credited to the payment of *Purchased Receivables* and the *Obligations* are conditional upon final payment to FLEXIBLE FUNDING in cash or solvent credits of the items giving rise to such funds. If any item credited to the payment of the *Purchased Receivables* and/or the *Obligations* is not paid to FLEXIBLE FUNDING or payment thereof is rescinded or required to be returned by FLEXIBLE FUNDING, the amount of any credit given for such item shall be charged to the balance of the *Obligations* whether or not the item is returned.

12.   Upon request from GRAHAM COUNTY LAND COMPANY entered through FLEXIBLE FUNDING's online portal, FLEXIBLE FUNDING shall forward within one (1) business day to GRAHAM COUNTY LAND COMPANY a report summarizing all then-current transactions in connection with *Factoring Facility*.

### PURCHASE PRICE; LIMIT; COMPENSATION TO FLEXIBLE FUNDING

13.   Subject to the terms of this Agreement, upon receipt of an offer for sale of *Eligible Receivables* from GRAHAM COUNTY LAND COMPANY entered on a business day through FLEXIBLE FUNDING's online portal and the related *Invoice Pack*, subject to the terms of this Agreement FLEXIBLE FUNDING shall, within one (1) business day, remit the aggregate *Initial Purchase Payment* for the *Purchased Receivables* contained in such *Invoice Pack* to such bank account as GRAHAM COUNTY LAND COMPANY shall designate. The amount of the *Initial Purchase Payment* for each *Purchased Receivable* contained in each *Invoice Pack* shall be specified on the *Facility Report*.

13.1   Subject to the application of collections to the *Reserve Account* as provided in paragraph 13.2 below, FLEXIBLE FUNDING shall withdraw each business day funds from collections of *Purchased Receivables* and all other *Collateral* deposited into the account described in paragraph 8 above that are available for withdrawal to the payment of the *Obligations*.

13.2   FLEXIBLE FUNDING shall credit to the *Reserve Account* all collections with respect to a *Purchased Receivable* in excess of the *Initial Purchase Payment* thereof. After the application of available funds to the *Obligations* as provided in paragraph 13.1 above, FLEXIBLE FUNDING shall charge to and deduct from the *Reserve Account* each day the amount of all *Obligations* then owing to FLEXIBLE FUNDING, and in the event that, after the application of available funds to the *Obligations* as provided in paragraph 13.1 above, the *Reserve Account* is less than the amount of the *Obligations* then owing to FLEXIBLE FUNDING, GRAHAM COUNTY LAND COMPANY shall promptly remit to FLEXIBLE FUNDING in cash the amount of such deficiency. To the extent that, application of available funds to the *Obligations* as provided in paragraph 13.1 above and application of the *Reserve Account* to the payment of the *Obligations*, the *Factoring Facility* is in a credit position, the amount remaining in the *Reserve Account* shall be remitted by FLEXIBLE FUNDING to GRAHAM COUNTY LAND COMPANY promptly by wire transfer of immediately available funds to the account designated therefor by GRAHAM COUNTY LAND COMPANY.

13.3   In no event shall the aggregate unpaid *Advances* at any one time exceed, without FLEXIBLE FUNDING's prior written approval, more than **$8,000,000.00** (Eight Million and 00/100 Dollars, the "*Limit*"). At any time the aggregate unpaid portion of *Advances* exceeds the *Limit*, or the aggregate unpaid portion of *Advances* exceeds 85% of the aggregate unpaid value of *Purchased Receivables* at such time, as determined by FLEXIBLE FUNDING, GRAHAM COUNTY LAND COMPANY understands and agrees that there shall be no further Advances on the *Factoring Facility* to the undersigned unless and until GRAHAM COUNTY LAND COMPANY pays the amount of such excess (the "*Over Advance*"), and GRAHAM COUNTY LAND COMPANY hereby promises to pay any *Over Advance* upon demand of FLEXIBLE FUNDING.

13.4   FLEXIBLE FUNDING will have immediate recourse against GRAHAM COUNTY LAND COMPANY, and may, at FLEXIBLE FUNDING's option (i) require that GRAHAM COUNTY LAND COMPANY repurchase a *Purchased Receivable*, on demand, or (ii) require that GRAHAM COUNTY LAND COMPANY replace a *Purchased Receivable* with an *Eligible Receivable* with a net invoice amount no less than the net invoice amount of such *Purchased Receivable*, or (iii) charge to the *Reserve Account* the unpaid portion of such *Purchased Receivable*:

i. if such *Purchased Receivable* is not paid in full by the *Account Debtor* by the earlier of (i) the due date of the invoice relating to such *Purchased Receivable*, or (ii) ninety (90) days from the date of the invoice relating to such *Purchased Receivable*; or

ii. if such *Purchased Receivable* (or any portion thereof) is at the time of purchase by FLEXIBLE FUNDING, or thereafter becomes, a *Disputed Account*; or

iii. if GRAHAM COUNTY LAND COMPANY has breached any of its representations, warranties or covenants with respect to such *Purchased Receivable;* or

iv. it is discovered that such *Purchased Receivable* was not an *Eligible Receivable* when tendered to FLEXIBLE FUNDING for sale; or

v. when in FLEXIBLE FUNDING's reasonable credit judgment, the *Account Debtor* from whom the *Purchased Receivable* is owing has become insolvent; or

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

vi. upon the occurrence of an *Event of Default*, or upon the effective date of termination of this Agreement, in which case FLEXIBLE FUNDING may demand that GRAHAM COUNTY LAND COMPANY repurchase all *Purchased Receivables*.

The repurchase of a *Purchased Receivable* shall not constitute a reassignment thereof; FLEXIBLE FUNDING shall retain its security interest in such repurchased *Purchased Receivable* (a "*Repurchased Receivable*"); and at FLEXIBLE FUNDING's option (a) GRAHAM COUNTY LAND COMPANY shall immediately pay to FLEXIBLE FUNDING an amount equal to the full amount outstanding under the *Purchased Receivable* all fees, costs and expenses owing to FLEXIBLE FUNDING in connection therewith (collectively, the "*Repurchase Price*"), (b) charge the *Repurchase Price* to the *Reserve Account*, or (c) require GRAHAM COUNTY LAND COMPANY to replace such Repurchased Receivable with an *Eligible Receivable* with the same net invoice amount as the *Repurchased Receivable*. In the case of GRAHAM COUNTY LAND COMPANY's replacement of a *Repurchased Receivable* with an *Eligible Receivable* pursuant to the terms of this Section, FLEXIBLE FUNDING shall not be required to make any *Initial Purchase Payment* with respect to such replacement *Eligible Receivable* and FLEXIBLE FUNDING shall reassign to GRAHAM COUNTY LAND COMPANY the subject *Repurchased Receivable*.

14. Fees Payable to FLEXIBLE FUNDING.

14.1   GRAHAM COUNTY LAND COMPANY agrees, in consideration for all *Advances* and other amounts paid by FLEXIBLE FUNDING under this Agreement, to pay to FLEXIBLE FUNDING a "*Factoring Fee*" on the outstanding principal amount of *Advances* until all amounts payable by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING under this Agreement are paid to FLEXIBLE FUNDING in cash, in full. The *Factoring Fee* shall, in the absence of an *Event of Default* (as defined in paragraph 27 below), mean a fluctuating rate that, when annualized, is equal to the greater of (a) U.S. Prime Rate as quoted in the Wall Street Journal, Money Rates Section as the Prime Rate (the "*Prime Rate*"), **plus** nine and seventy-five hundredths percent (9.75%), or (b) fifteen and twenty-five one hundredths percent (15.25%) (the "*Ordinary Fee*"). Upon the occurrence of any *Event of Default*, the *Factoring Fee* shall mean the *Ordinary Fee* determined pursuant to the immediately preceding sentence **plus** five percent (5.00%) *per annum*. The *Factoring Fee* shall be computed on the basis of a year consisting of three hundred sixty (360) days for the number of days actually elapsed, and shall be payable monthly in arrears commencing on the first business of the calendar month immediately following the date of this Agreement, on the first business day of each calendar month thereafter, on the termination date of this Agreement, and following the termination date, upon demand by FLEXIBLE FUNDING until all amounts payable by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING under this Agreement are paid to FLEXIBLE FUNDING in cash, in full (each, a "*Fee Payment Date*"). For the purpose of computing the *Factoring Fee*, interest shall continue to accrue on the amount of any funds credited to the payment of the *Factoring Facility* for a period of five (5) business days after the date so credited.

14.2   In addition to the *Factoring Fee*, as compensation for FLEXIBLE FUNDING'S services provided for in this Agreement, GRAHAM COUNTY LAND COMPANY agrees to pay to FLEXIBLE FUNDING:

14.3   A "*Collateral Management Fee*" equal to one-tenth percent (0.10%) of the *Limit*, payable monthly in arrears on each *Fee Payment Date*.

14.4   An "*Unused Line Fee*" equal to the amount by which the *Factoring Fee* payable in any month is less than Fifteen Thousand and 00/100 Dollars ($15,000.00). The *Unused Line Fee* shall be calculated as of the end of each month and shall be payable on each *Fee Payment Date*. The *Unused Line Fee* shall be pro-rated for any partial month under this Agreement.

14.5   "*Liquidated Damages*" in amount equal to two percent (2.00%) of the *Limit* in the event that prior to the "*Initial Termination Date*", or prior to the last day of any "*Subsequent Renewal Period*" (as such terms are defined in paragraph 26 below), (a) GRAHAM COUNTY LAND COMPANY prepays all obligations payable to FLEXIBLE FUNDING pursuant to paragraph 32 below, or (b) pursuant to the terms of this Agreement, either (i) FLEXIBLE FUNDING demands repayment of the *Factoring Facility* and other amounts payable to FLEXIBLE FUNDING under the terms of this Agreement, in whole or in part, pursuant to paragraph 27 below, or (ii) repayment of the *Factoring Facility* and other amounts payable to FLEXIBLE FUNDING under the terms of this Agreement are otherwise accelerated in whole or in part pursuant to paragraph 27 below. GRAHAM COUNTY LAND COMPANY acknowledges and agrees that *Liquidated Damages* shall be payable in the amount described above notwithstanding any acceleration of repayment and/or the maturity date of the *Factoring Facility* pursuant to paragraph 27 below. FLEXIBLE FUNDING and GRAHAM COUNTY LAND COMPANY each hereby acknowledges and agrees that it would be impractical and extremely difficult to ascertain FLEXIBLE FUNDING's actual damages from early termination of the *Factoring Facility*, and that the *Liquidated Damages* has been arrived at by mutual agreement of FLEXIBLE FUNDING and GRAHAM COUNTY LAND COMPANY as to a reasonable calculation of FLEXIBLE FUNDING's lost profits as a result of early termination of the *Factoring Facility*. FLEXIBLE FUNDING and GRAHAM COUNTY LAND COMPANY each further hereby acknowledges and agrees that the *Liquidated Damages* provided above is intended to be fair and reasonable approximations of FLEXIBLE FUNDING's actual damages from early termination of the *Factoring Facility*, are presumed to be the amount of damages sustained by FLEXIBLE FUNDING as a result of such early termination, are reasonable under the circumstances currently existing, and that the *Liquidated Damages* are liquidated damages and are not intended to be penalties.

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

15.    GRAHAM COUNTY LAND COMPANY agrees that FLEXIBLE FUNDING may (a) charge all fees, costs and expenses payable by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING pursuant to the terms of this Agreement (including any amount paid by FLEXIBLE FUNDING and required to be reimbursed by GRAHAM COUNTY LAND COMPANY pursuant to the terms of this Agreement) to the *Factoring Facility*, (b) pay such amounts to FLEXIBLE FUNDING from the proceeds of the *Factoring Facility*, and (c) treat each such payment as an *Advance* of the *Factoring Facility* on the date proceeds of the *Factoring Facility* above are paid to FLEXIBLE FUNDING as described above.

## REPRESENTATIONS, WARRANTIES AND COVENANTS OF GRAHAM COUNTY LAND COMPANY

16.    GRAHAM COUNTY LAND COMPANY represents, warrants and covenants to FLEXIBLE FUNDING that (except insofar as GRAHAM COUNTY LAND COMPANY and FLEXIBLE FUNDING have expressly otherwise agreed in writing) that:

16.1    The goods and services provided by GRAHAM COUNTY LAND COMPANY to each *Account Debtor* that are described within each *Invoice Pack* were in fact provided or rendered on the date(s) and in the amount(s) described in the *Invoice Pack*, and that the *Eligible Receivables* evidenced thereby are and will continue to be genuine, bona fide and collectable and without right of offset, counterclaim or right of return or cancellation; and

16.2    Each *Account Receivable* that is submitted for funding and described in an *Invoice Pack* constitutes an *Eligible Receivable* (as defined in paragraph 1.4 above); and

16.3    GRAHAM COUNTY LAND COMPANY will immediately notify FLEXIBLE FUNDING, in writing if GRAHAM COUNTY LAND COMPANY is notified (in writing, by electronic communication or by telephone) by *Account Debtor* of any disputes, or of any right of offset, counterclaim or right of return or cancellation against *Account Debtor's* obligation to GRAHAM COUNTY LAND COMPANY; and

16.4    The *Collateral* is free and clear of all liens, encumbrances, security interests and adverse claims other than such as were created by this Agreement in favor of FLEXIBLE FUNDING; and

16.5    All *Accounts Receivable* in each *Invoice Pack* are, and at all times will continue to be, genuine, *bona fide* and collectible; and

16.6    No *Purchased Receivable* will, when assigned to FLEXIBLE FUNDING, or at any time thereafter, be a *Disputed Account* or subject to any dispute, right of offset, counterclaim, or right of cancellation; and

16.7    All *Purchased Receivables* will, when assigned to FLEXIBLE FUNDING, and at all times thereafter, be due and unconditionally payable on terms acceptable to FLEXIBLE FUNDING but never more than ninety (90) days from invoicing, and will conform to the terms expressly set forth on the face of the relevant invoice; no account will be past due at the time assigned; and

16.8    All facts, figures, representations given, or caused to be given by GRAHAM COUNTY LAND COMPANY to FLEXIBLE FUNDING in connection with the value of the *Purchased Receivables* assigned hereunder will be true and correct. FLEXIBLE FUNDING may verify GRAHAM COUNTY LAND COMPANY's *Account Debtor* contracts and balances; and

16.9    GRAHAM COUNTY LAND COMPANY's books and records do and will fully and accurately reflect all of GRAHAM COUNTY LAND COMPANY's assets and liabilities (absolute and contingent), have been and will be kept in the ordinary course of business in accordance with generally accepted accounting principles consistently applied and all information contained therein is and will be true and correct; and

16.10    All taxes of any governmental or taxing authority due or payable by, or imposed or assessed against, GRAHAM COUNTY LAND COMPANY, have been paid and will be paid in full before delinquency; and

16.11    There are no actions or proceedings pending by or against GRAHAM COUNTY LAND COMPANY before any court or administrative agency, and there are no pending, threatened, or imminent governmental investigations, or claims, complaints, or prosecutions involving GRAHAM COUNTY LAND COMPANY; and

16.12    GRAHAM COUNTY LAND COMPANY has the legal power and authority to enter into this Agreement and to perform and discharge GRAHAM COUNTY LAND COMPANY's obligations hereunder; and

16.13    No information furnished by or on behalf of GRAHAM COUNTY LAND COMPANY (including but not limited to facts, figures, and representations given) shall contain untrue statements of material fact or omit material facts.

17.    Each warranty and representation contained in this agreement shall be deemed repeated with each Advance and shall be conclusively presumed to have been relied on by FLEXIBLE FUNDING regardless of any investigation made, or information possessed by FLEXIBLE FUNDING. The warranties, representations and agreements set forth herein shall be cumulative and in addition to any and all other warranties, representations and agreements contained in any other document or instrument which GRAHAM COUNTY LAND COMPANY shall give, or cause to be given, to FLEXIBLE FUNDING, either now or hereafter. FLEXIBLE FUNDING's right to bring an action for breach of any such representation or to exercise any right, remedy, power or privilege under this Agreement based upon the breach of any such representation shall survive the execution, delivery and

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

acceptance of this Agreement, and the closing of the transactions described in this Agreement, until all amounts payable to FLEXIBLE FUNDING under this Agreement are finally and indefeasibly paid to FLEXIBLE FUNDING in cash in full.

### GRANT OF SECURITY INTEREST; COLLATERAL

18.    GRAHAM COUNTY LAND COMPANY hereby pledges, assigns and grants to FLEXIBLE FUNDING a continuing lien upon and security interest in and to all of GRAHAM COUNTY LAND COMPANY's rights, title and interests in and to the following, wherever located and whether owned on the *Effective Date* or thereafter acquired, whether owned or held by GRAHAM COUNTY LAND COMPANY or by any other person in any manner for GRAHAM COUNTY LAND COMPANY's account (and specifically including all accessions to, substitutions for and all replacements, products and cash and non-cash proceeds of all of the following), and as such terms are defined in the UCC (hereinafter the "*Collateral*"):

All cash, money, accessions, accounts, as-extracted collateral, certificates of title, chattel paper and all rights to payment in connection therewith, commercial tort claims, deposit accounts, documents, electronic chattel paper and all rights to payment in connection therewith, equipment, fixtures, general intangibles, goods, health-care-insurance receivables, instruments, inventory, investment property, letter-of-credit rights, payment intangibles, proceeds, records (including but not limited all to books and records pertaining to any of the items or subject matter described in this paragraph), software, supporting obligations, all rights to payment for money or funds advanced or sold, and all money or other property of any kind now or at any time or times hereafter in the possession or under the control of FLEXIBLE FUNDING or any affiliate of FLEXIBLE FUNDING or any representative, agent or correspondent of FLEXIBLE FUNDING pertaining to any of the items or subject matter described in this paragraph, and to the extent not otherwise included in the foregoing, all other property in which a Security Interest or other Lien may be granted under the UCC or which may be delivered to and held by FLEXIBLE FUNDING pursuant to the terms of this Agreement

19.    The pledge, assignment lien and security interest granted to FLEXIBLE FUNDING pursuant to this Agreement shall continue in full force and effect until all amounts payable to FLEXIBLE FUNDING pursuant to this Agreement have been finally and indefeasibly paid to FLEXIBLE FUNDING in cash and all other obligations of GRAHAM COUNTY LAND COMPANY hereunder have been performed in full, notwithstanding the termination of FLEXIBLE FUNDING's obligations to extend credit to GRAHAM COUNTY LAND COMPANY under this Agreement, the full or partial termination (whether by prepayment, demand or acceleration) of the *Factoring Facility*, in whole or in part, or that the *Factoring Facility* may from time to time be temporarily in a credit position. Any balances to the credit of GRAHAM COUNTY LAND COMPANY in the possession of FLEXIBLE FUNDING, and any other property or assets of GRAHAM COUNTY LAND COMPANY in the possession of FLEXIBLE FUNDING, shall be held by FLEXIBLE FUNDING as *Collateral*, and applied in whole or partial satisfaction of the amounts payable to FLEXIBLE FUNDING hereunder when due, subject to the terms of this Agreement. FLEXIBLE FUNDING shall not have any obligation to release any security interest, lien or other encumbrance in, on or to any *Collateral*, unless and until all of the requirements of paragraph 29 below have been fully satisfied and performed. At all times prior to the final and indefeasible payment to FLEXIBLE FUNDING in cash of all amounts payable to FLEXIBLE FUNDING pursuant to the terms of this Agreement, FLEXIBLE FUNDING shall have, in addition to all other rights, powers, remedies and privileges of FLEXIBLE FUNDING under this Agreement (a) all rights, powers, remedies and privileges granted to a secured party under the UCC, and (b) all rights, powers, remedies and privileges with respect to *Collateral* granted to FLEXIBLE FUNDING under all other agreements, documents and instruments executed and/or delivered to FLEXIBLE FUNDING in connection with the transactions contemplated by this Agreement, and (c) all rights, powers, remedies and privileges of FLEXIBLE FUNDING with respect to the *Collateral* available under applicable law.

20.    GRAHAM COUNTY LAND COMPANY will execute and deliver to FLEXIBLE FUNDING security agreements, assignments (including, without limitation, assignments of specific accounts, *Accounts Receivable*, certificates of title, chattel paper, documents, instruments, goods, inventory, equipment and general intangibles), control agreements, mortgages, deeds of trust, collateral assignments, and other documents and instruments as FLEXIBLE FUNDING may at any time reasonably request to establish, evidence, attach, perfect, or protect any security interest, pledge, lien, charge, mortgage or other encumbrance granted to FLEXIBLE FUNDING. GRAHAM COUNTY LAND COMPANY authorizes FLEXIBLE FUNDING to file all financing statements (including, without limitation, describing the Collateral as "all assets" or "all personal property," whether owned or hereafter acquired), and all continuations or amendments thereof, to establish, evidence attach, perfect or protect any security interest, pledge, lien, charge, mortgage or other encumbrance granted to FLEXIBLE FUNDING in the Collateral.

21.    GRAHAM COUNTY LAND COMPANY covenants and agrees that it shall not grant or give, or suffer to permit, any lien, Security Interest, pledge or other encumbrance in, on or to the Collateral, in whole or in part, without FLEXIBLE FUNDING's prior written consent, which consent will be granted or withheld in FLEXIBLE FUNDING's sole discretion.

22.    GRAHAM COUNTY LAND COMPANY hereby irrevocably appoints FLEXIBLE FUNDING its agent for the purpose of executing and filing any financing statement or similar document which may be necessary to perfect and continue perfected such security interest under the Uniform Commercial Code. GRAHAM COUNTY LAND COMPANY hereby approves and ratifies any financing statement filed by FLEXIBLE FUNDING against GRAHAM COUNTY LAND COMPANY prior to the *Effective Date*. GRAHAM COUNTY LAND COMPANY agrees to not further encumber the *Collateral* described herein.

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

23.   FLEXIBLE FUNDING may, in its sole discretion, decide to assist the efforts to require *Account Debtors* to pay *Accounts Receivable* obligations directly to the payment instructions outlined in paragraph 9 above, with the following actions: (i) notify any *Account Debtor* that its Account has been assigned to FLEXIBLE FUNDING by GRAHAM COUNTY LAND COMPANY and that payment thereof shall be made to the order of and directly to FLEXIBLE FUNDING and/or (ii) demand, collect or enforce payment of any *Accounts Receivable;* and/or (iii) communicate directly with GRAHAM COUNTY LAND COMPANY's Account Debtors to verify the amount and validity of any invoice created by GRAHAM COUNTY LAND COMPANY.

24.   GRAHAM COUNTY LAND COMPANY shall not, without FLEXIBLE FUNDING's prior written consent in each instance: (a) grant an extension of time for payment of any *Account Receivable*; (b) compromise or settle any *Account Receivable*; (c) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any *Account Receivable*.

25.   GRAHAM COUNTY LAND COMPANY hereby irrevocably appoints FLEXIBLE FUNDING and its designees GRAHAM COUNTY LAND COMPANY's true and lawful attorney in fact, to exercise after an *Event of Default*, all or any of the following powers until all amounts due FLEXIBLE FUNDING have been fully, finally, and indefeasibly paid in full:

25.1   Receive, take, endorse, assign, deliver, accept and deposit, in the name of FLEXIBLE FUNDING or GRAHAM COUNTY LAND COMPANY, any and all cash, checks, commercial paper, drafts, remittances and other instruments and documents relating to the *Accounts Receivable, Collateral* or the proceeds thereof;

25.2   Take or bring, in the name of FLEXIBLE FUNDING or GRAHAM COUNTY LAND COMPANY, all steps, actions, suits or proceedings deemed by FLEXIBLE FUNDING necessary or desirable to effect collection of or other realization upon the *Accounts Receivable* and/or other *Collateral*.

25.3   To extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all, or *Collateral* and discharge or release any *Account Debtor* or other obligor, without affecting any amounts due hereunder.

## TERM OF AGREEMENT

26.   Unless earlier terminated pursuant to the terms of this Agreement, this Agreement shall terminate on the 2nd anniversary of the *Effective Date* (the "*Initial Termination Date*"); <u>provided however</u>, this Agreement shall continue for additional 1-year periods commencing on the day immediately following the *Initial Termination Date*, and each subsequent 1-year period thereafter (each, a "*Subsequent Renewal Period*"), unless either party hereto provides written notice of its intent not to renew this Agreement at least sixty (60) calendar days prior to the *Initial Termination Date*, or sixty (60) calendar days prior to the end of a *Subsequent Renewal Period*, as applicable.

## TERMINATION BY FLEXIBLE FUNDING

27.   An event of default ("*Event of Default*") shall be deemed to have occurred if any of the following occurs:

27.1   GRAHAM COUNTY LAND COMPANY makes any false, misleading or untrue representation or warranty in connection with, or contained in, this Agreement, or fails to comply with any covenant, obligation or material provision of this Agreement; or

27.2   GRAHAM COUNTY LAND COMPANY makes a general assignment for the benefit of its creditors other than FLEXIBLE FUNDING or commences or has commenced against it any proceeding under any Title of the Bankruptcy Code of the United States or under any similar federal, state or local law existing for the relief from creditors; or

27.3   A Receiver or Trustee is appointed for GRAHAM COUNTY LAND COMPANY or any proceeding is instituted for the dissolution or full or partial liquidation of GRAHAM COUNTY LAND COMPANY; or

27.4   A sale or transfer of fifty percent (50%) or more of the interests of GRAHAM COUNTY LAND COMPANY is effected in one or a series of related transactions without the prior written approval of FLEXIBLE FUNDING, which approval shall not be unreasonably withheld; or

27.5   Any change occurs in GRAHAM COUNTY LAND COMPANY's business or business structure, including, without limitation, the ownership thereof, or financial condition, or disputes between principals/managers/officers, which causes FLEXIBLE FUNDING, in its sole discretion, to deem itself insecure; or

27.6   Any subordination agreement whereby any indebtedness of GRAHAM COUNTY LAND COMPANY to any third party is subordinated to GRAHAM COUNTY LAND COMPANY's obligations to FLEXIBLE FUNDING is amended without the consent of FLEXIBLE FUNDING or is breached or repudiated in any manner by a third party; or

27.7   GRAHAM COUNTY LAND COMPANY retains or converts moneys properly due to FLEXIBLE FUNDING; or

27.8   Any guarantor of GRAHAM COUNTY LAND COMPANY's obligations to FLEXIBLE FUNDING fails to perform or observe any of its obligations to FLEXIBLE FUNDING or notifies FLEXIBLE FUNDING of an intention to

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

rescind, modify, terminate or revoke any guaranty, or any such guaranty ceases to be in full force and effect for any reason whatsoever; or

27.9   A federal, state or local tax lien is filed against GRAHAM COUNTY LAND COMPANY or its principals; or

27.10  GRAHAM COUNTY LAND COMPANY fails to pay the full amount of all *Obligations* to FLEXIBLE FUNDING, in cash, upon the termination of this Agreement.

After an *Event of Default*, FLEXIBLE FUNDING may suspend or terminate FLEXIBLE FUNDING's obligations to make *Advances* and/or render other services hereunder upon notice to GRAHAM COUNTY LAND COMPANY that an *Event of Default* has occurred, in the event of a termination of this Agreement by FLEXIBLE FUNDING, GRAHAM COUNTY LAND COMPANY shall be obligated, without further demand, protest or notice of any kind, to pay immediately to FLEXIBLE FUNDING the full amount of all *Obligations* payable to FLEXIBLE FUNDING hereunder. Notwithstanding the immediately preceding sentence, upon the occurrence of any *Event of Default* described in either of paragraphs 27.2 or 27.3 above, without notice, demand or other action by FLEXIBLE FUNDING (a) all amounts payable to FLEXIBLE FUNDING pursuant to this Agreement, including but not limited to, all outstanding and unpaid *Advances*, *Factoring Fees* payable thereon (until all amounts payable to FLEXIBLE FUNDING hereunder are paid in cash in full), *Liquidated Damages*, and all other fees, costs and expenses payable with respect thereto, shall immediately become due and payable whether or not payable on demand prior to such *Event of Default*, and (b) the *Factoring Fee* shall immediately increase to the default rate, and (c) all obligations to purchase *Eligible Receivables*, make *Advances* or otherwise provide any services or other accommodations to GRAHAM COUNTY LAND COMPANY under this Agreement, or any other agreement, document or instrument between the parties shall immediately terminate. After the occurrence and during the continuation of any *Event of Default*, FLEXIBLE FUNDING may take all other and further actions and avail itself of any and all rights, powers, remedies and privileges available to FLEXIBLE FUNDING under this Agreement, under the UCC or other applicable law, at law or in equity. Upon termination pursuant to this paragraph 27, FLEXIBLE FUNDING may take all steps deemed necessary to effect collection of the *Accounts Receivable* and otherwise dispose of the *Collateral* in accordance with the terms of this Agreement, the UCC and applicable law.

28.   In the absence of any *Event of Default*, FLEXIBLE FUNDING may terminate its obligations under this Agreement provided it has given written notice to GRAHAM COUNTY LAND COMPANY at least sixty (60) days prior to the effective date of termination, with all *Obligations* becoming immediately due and payable on the effective date of termination.

29.   This Agreement and the security interests hereby granted shall remain in effect until such time as all amounts payable to FLEXIBLE FUNDING under this Agreement have been paid to FLEXIBLE FUNDING in cash and satisfied in full, and a *General Release* shall have been executed and delivered by GRAHAM COUNTY LAND COMPANY in favor of FLEXIBLE FUNDING.

30.   After termination, at such time as all *Obligations* shall have been indefeasibly paid to FLEXIBLE FUNDING in cash and satisfied in full, and a *General Release* shall have been executed and delivered by GRAHAM COUNTY LAND COMPANY in favor of FLEXIBLE FUNDING, FLEXIBLE FUNDING will re-assign to GRAHAM COUNTY LAND COMPANY any and all interests it may have in the *Collateral* and will execute such termination statements as GRAHAM COUNTY LAND COMPANY may reasonably request.

## TERMINATION BY GRAHAM COUNTY LAND COMPANY

31.   In the event that:

31.1   FLEXIBLE FUNDING fails to pay to GRAHAM COUNTY LAND COMPANY when due any monies owing to GRAHAM COUNTY LAND COMPANY under this Agreement; or

31.2   FLEXIBLE FUNDING fails to perform timely the services to be rendered by FLEXIBLE FUNDING hereunder;

then, GRAHAM COUNTY LAND COMPANY may notify FLEXIBLE FUNDING of its intent to terminate this Agreement, which termination shall become effective only upon the payment to FLEXIBLE FUNDING of the full amount of all *Obligations* outstanding hereunder and all other fees, costs and expenses payable by GRAHAM COUNTY LAND COMPANY hereunder.

32.   GRAHAM COUNTY LAND COMPANY may terminate this Agreement at any time, for any reason, provided it has given written notice to FLEXIBLE FUNDING at least sixty (60) days prior to the effective date of termination and further provided that all *Obligations* payable hereunder shall have been paid in full to FLEXIBLE FUNDING prior to the effective date of termination, and a *General Release* shall have been executed and delivered by GRAHAM COUNTY LAND COMPANY in favor of FLEXIBLE FUNDING. Any notice of termination which is not followed by payment in full within sixty (60) days shall be void and ineffective.

33.   Upon termination of this Agreement for any reason, FLEXIBLE FUNDING shall render an accounting for all *Purchased Receivables* to GRAHAM COUNTY LAND COMPANY. Termination of this Agreement shall not relieve or discharge GRAHAM COUNTY LAND COMPANY from its payment obligations to FLEXIBLE FUNDING until such time as all payment obligations to FLEXIBLE FUNDING have been paid and satisfied in full.

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

## INSURANCE REQUIREMENTS

34.   GRAHAM COUNTY LAND COMPANY shall provide FLEXIBLE FUNDING with proof of employee bonding (if required by its' *Account Debtors*), workers compensation and liability insurance.  GRAHAM COUNTY LAND COMPANY shall notify FLEXIBLE FUNDING of any changes in insurance and shall ensure that FLEXIBLE FUNDING is named on the certificate of insurance list as certificate holder.

## INDEMNIFICATION

35.   GRAHAM COUNTY LAND COMPANY agrees and warrants that under no circumstances are employees of GRAHAM COUNTY LAND COMPANY to be considered employees of FLEXIBLE FUNDING for any purpose, including but not limited to, any state or federal wage and hour law, federal withholding, state withholding, withholding to other taxing authority or health benefits program; employees shall at all times be recognized as the employees of GRAHAM COUNTY LAND COMPANY for all purposes.  GRAHAM COUNTY LAND COMPANY shall promptly after each pay period as required, make payments to the Internal Revenue Service for federal taxes; to the State for state taxes; and to any other governmental agency to whom any tax or similar payment obligation is due with respect to employees' activities.  GRAHAM COUNTY LAND COMPANY shall cause FLEXIBLE FUNDING to be given promptly suitable evidence of all such payments.

36.   GRAHAM COUNTY LAND COMPANY warrants that all of its employees are legally entitled to be employed in the United States and agrees to defend and hold harmless FLEXIBLE FUNDING, its directors, officers, employees and agents, for any failure on the part of GRAHAM COUNTY LAND COMPANY to comply with relevant immigration, non-discrimination, employment and employee-benefit laws.

37.   Without limiting any other rights hereunder or under applicable law, GRAHAM COUNTY LAND COMPANY hereby agrees to indemnify FLEXIBLE FUNDING and all officers, directors, shareholders, employees and agents thereof (each an "*Indemnified Person*"), forthwith on demand, from and against any and all damages, losses, claims, liabilities and related costs and expenses, including attorneys' fees and disbursements (all of the foregoing being collectively referred to as "*Indemnified Amounts*") awarded against or incurred by any of them arising out of or relating to the transactions contemplated hereby or the ownership of any *Account Receivable*, including without limitation:  (a) any representation or warranty made by GRAHAM COUNTY LAND COMPANY or any officers or affiliates that was false or misleading when made; (b) GRAHAM COUNTY LAND COMPANY's breach of applicable law, rule or regulation; (c) any imperfection in FLEXIBLE FUNDING's security or ownership interest in any *Collateral* or *Account Receivable* caused by GRAHAM COUNTY LAND COMPANY; (d) any dispute, claim, offset or defense of any Obligor, including without limitation, any relating to the goods or services related to such *Accounts Receivable* and products liability claims; and (e) any tax, governmental fee or charge and all interest and penalties thereon.

38.   GRAHAM COUNTY LAND COMPANY hereby releases, discharges and agrees to hold harmless and indemnify FLEXIBLE FUNDING's banks from any and all actions, suits, causes of action, claims and demands whatsoever, including reasonable attorneys' fees and costs, which GRAHAM COUNTY LAND COMPANY has, or may have, in the future arising out of the authority GRAHAM COUNTY LAND COMPANY has granted to FLEXIBLE FUNDING to accept, endorse and deposit remittances for GRAHAM COUNTY LAND COMPANY to the FLEXIBLE FUNDING  Deposit Accounts.

## WAIVERS

39.   The failure of FLEXIBLE FUNDING or GRAHAM COUNTY LAND COMPANY to enforce any of the terms and provisions of this Agreement, or the failure to exercise any right upon a default hereunder shall apply only in the particular instance and shall not operate as a continuing waiver of rights.  To the maximum extent permitted under applicable law, GRAHAM COUNTY LAND COMPANY hereby irrevocably waives all of the following:

39.1   Any and all rights and remedies now or hereafter conferred by statute or otherwise which may require FLEXIBLE FUNDING to (a)  take any judicial proceedings in connection with any Collateral or otherwise use any Collateral in mitigation of FLEXIBLE FUNDING's damages as set forth herein, or (b) proceed against any person or entity liable for any obligations as a condition to or prior to proceeding hereunder; and (c) dispose, sell or otherwise realize upon or collect or apply any personal property, securing any obligations of GRAHAM COUNTY LAND COMPANY, as a condition to, or prior to proceeding against GRAHAM COUNTY LAND COMPANY hereunder.

## NOTICE

40.   Any notice, request or demand under this Agreement shall be in writing, with proof of receipt, issued via USPS, Fed Ex, UPS or designated email address.

40.1   Any Notice, Request or Demand shall be deemed received and effective on the day on which it is received.

40.2   Notice of any (a) change of address of principal place of business, (b) state of incorporation, (c) legal business name, or (d) Fictitious Business Name (DBA) by either party shall be in writing and mailed not less than ten (10) days prior to any such change.

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

40.3   Both parties agree to communicate with one another fully and in good faith, particularly about business conditions, changes, concerns and or other matters pertaining to GRAHAM COUNTY LAND COMPANY's business, and each shall inform the other as soon as possible but not later than Five (5) days after any relevant occurrence.

## INSPECTION AND REPORTING

41.   FLEXIBLE FUNDING, through its agents or employees, shall have the right to inspect and audit the books and records of GRAHAM COUNTY LAND COMPANY at all reasonable times without hindrance or delay at FLEXIBLE FUNDING's expense.   GRAHAM COUNTY LAND COMPANY shall provide FLEXIBLE FUNDING with copies of its quarterly balance sheet, income statement and Employer's Quarterly Federal Tax Return, Form 941, by the 30th day following the end of each quarter. FLEXIBLE FUNDING may monitor federal tax, state tax, and workers compensation insurance payments GRAHAM COUNTY LAND COMPANY is required to make.   GRAHAM COUNTY LAND COMPANY will provide proof of payment and copies of reports when requested.

42.   GRAHAM COUNTY LAND COMPANY shall have the right to inspect and audit the books and records of FLEXIBLE FUNDING pertaining to transactions subject to this Agreement upon default by FLEXIBLE FUNDING at GRAHAM COUNTY LAND COMPANY's expense.

## ASSIGNMENT

43.   This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors or permitted assigns, and may be assigned by FLEXIBLE FUNDING in whole or in part, but shall not be assignable by GRAHAM COUNTY LAND COMPANY without the express, written consent of FLEXIBLE FUNDING.

44.   Any attempted assignment by GRAHAM COUNTY LAND COMPANY of its rights or obligations under this Agreement without the express prior written consent of FLEXIBLE FUNDING shall be void, and any permitted assignment will not excuse GRAHAM COUNTY LAND COMPANY's obligations to FLEXIBLE FUNDING without a full release of such obligations and duties, signed by both parties. FLEXIBLE FUNDING may still proceed against GRAHAM COUNTY LAND COMPANY on any payment obligation outstanding at the time of assignment until such obligation is indefeasibly fulfilled by GRAHAM COUNTY LAND COMPANY or its assigns.

45.   The parties anticipate that FLEXIBLE FUNDING may assign its rights in the *Collateral* provided under this Agreement and monies receivable by it hereunder to its lender(s). GRAHAM COUNTY LAND COMPANY agrees to such assignment and that any such assignee shall be a third-party beneficiary of this Agreement.

## SEVERABILITY OF PROVISIONS

46.   Each and every provision of this Agreement shall be severable from every other provision for the purposes of determining legal enforceability of any such provision or provisions.

## DISPUTE RESOLUTION AND JUDICIAL ACTIONS

47.   Any dispute between FLEXIBLE FUNDING and GRAHAM COUNTY LAND COMPANY arising out of or in connection with this Agreement shall, upon written demand, be determined by binding arbitration in San Francisco, California. The losing party shall pay to the prevailing party any and all legal expenses and reasonable attorneys' fees incurred by the prevailing party in enforcing this Agreement.

48.   In the event that one or more party waive or decline to participate in Binding Arbitration, any action shall be filed in the Superior Court or District Court located in San Francisco, California.

49.   GRAHAM COUNTY LAND COMPANY agrees to reimburse FLEXIBLE FUNDING, on demand, for:

49.1   The actual costs, including photocopying, travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which GRAHAM COUNTY LAND COMPANY is a party and FLEXIBLE FUNDING is not;

49.2   Upon a finding that FLEXIBLE FUNDING is the prevailing party, the actual amount of all costs and expenses, including attorneys' fees and costs, which FLEXIBLE FUNDING may incur in enforcing this Agreement; and

49.3   Any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against GRAHAM COUNTY LAND COMPANY, including those (a) arising out the automatic stay, (b) seeking dismissal or conversion of the bankruptcy proceeding or (c) opposing confirmation of GRAHAM COUNTY LAND COMPANY's plan thereunder.

50.   IN THE EVENT THAT ONE OR MORE PARTIES HERETO DECLINES BINDING ARBITRATION, GRAHAM COUNTY LAND COMPANY AND FLEXIBLE FUNDING EACH HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING HERETO, ANY DOCUMENTS DELIVERED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

HEREBY OR THEREBY. GRAHAM COUNTY LAND COMPANY AND FLEXIBLE FUNDING ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO FLEXIBLE FUNDING TO ENTER HEREINTO. EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

51.   This agreement shall be deemed to have been made in the State of California and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and constructed in accordance with the laws of the State of California, without regard to principles of conflicts of law.

## AUTHORITY AND EFFECTIVENESS

52.   GRAHAM COUNTY LAND COMPANY, INC. is a duly authorized and existing entity in good standing under the laws of the **State of North Carolina**. The execution, delivery and performance of this Agreement and the documents contemplated herein are within GRAHAM COUNTY LAND COMPANY's powers, have been duly authorized, and are not in contravention of any law, the terms of any indenture, agreement or undertaking to which GRAHAM COUNTY LAND COMPANY is a party or by which it is bound.

53.   GRAHAM COUNTY LAND COMPANY hereby authorizes, and FLEXIBLE FUNDING hereby agrees to accept, instructions from any personnel issued a login to the FLEXIBLE FUNDING portal.

54.   This Agreement will remain in full force and effect and continue to be effective should: (a) any petition be filed by or against GRAHAM COUNTY LAND COMPANY for liquidation or reorganization; (b) GRAHAM COUNTY LAND COMPANY become insolvent or make an assignment for the benefit of creditors; or (c) a receiver or trustee be appointed for all or any significant part of GRAHAM COUNTY LAND COMPANY's assets.

## FLEXIBILITY AND INTREGRATION

55.   FLEXIBLE FUNDING's rights and remedies under this Agreement shall be cumulative and FLEXIBLE FUNDING shall have all other rights and remedies not inconsistent therewith as provided by law. No exercise by FLEXIBLE FUNDING of one right or remedy shall be deemed an election and no waiver by FLEXIBLE FUNDING of any default on GRAHAM COUNTY LAND COMPANY's part shall be deemed a continuing waiver. No delay by FLEXIBLE FUNDING shall constitute a waiver or election.

56.   This Agreement supersedes all prior or contemporaneous agreements and understandings between said parties, verbal or written, express or implied, relating to the subject matter hereof.

## GENERAL PROVISIONS

57.   This Agreement amends and restates in its entirety, and is given in replacement of and in substitution for, but not in repayment of, the *Original Factoring Agreement* between *FirstLine* and GRAHAM COUNTY LAND COMPANY, as assigned to, and assumed by, FLEXIBLE FUNDING pursuant to the *Assignment Documents*.

58.   FLEXIBLE FUNDING's rights, powers, remedies and privileges under this Agreement (specifically including all rights, powers, remedies and privileges of FLEXIBLE FUNDING as a Secured Party under the UCC) shall be cumulative and not alternative or exclusive, irrespective of any other rights, powers, remedies or privileges that may be available to FLEXIBLE FUNDING under any other agreement, document or instrument between the parties, by operation of law or otherwise, and may be exercised by FLEXIBLE FUNDING at such time or times and in such order as FLEXIBLE FUNDING in FLEXIBLE FUNDING's sole discretion may determine, and are for the sole benefit of FLEXIBLE FUNDING.

59.   FLEXIBLE FUNDING's rights, powers, remedies and privileges under this Agreement and the agreements, covenants, liabilities and obligations of Borrower set forth in this Agreement (including, but not limited to, the final and indefeasible payment to FLEXIBLE FUNDING in cash of all amounts payable to FLEXIBLE FUNDING under this Agreement in full, and all security interests, liens, charges and other encumbrances granted to FLEXIBLE FUNDING under this Agreement) shall continue to be effective, or be reinstated, as the case may be, if at any time (a) any payment in respect of the *Factoring Facility* or other amount payable to FLEXIBLE FUNDING hereunder or performance hereunder is rescinded or must otherwise be restored or returned by FLEXIBLE FUNDING by reason of any bankruptcy, reorganization, arrangement, composition or similar proceeding, whether as a "voidable preference", "fraudulent conveyance", or otherwise, or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, GRAHAM COUNTY LAND COMPANY or any other person, or any property of GRAHAM COUNTY LAND COMPANY or any other person, or otherwise, all as though such payment had not been made or performance completed.

60.   In no event will FLEXIBLE FUNDING have any liability to GRAHAM COUNTY LAND COMPANY for lost profits or other special or consequential damages.

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

61.    GRAHAM COUNTY LAND COMPANY acknowledges that FLEXIBLE FUNDING does not intend to reserve, charge or collect interest on money borrowed under this Agreement at any rate in excess of the rates permitted by applicable law and that, should a final order determine that any interest rate provided for in this Agreement exceeds such legally permissible rate(s), such rate will automatically be reduced to the maximum rate permitted under applicable law.  If FLEXIBLE FUNDING should collect any amount from GRAHAM COUNTY LAND COMPANY which is determined to be interest in a final order, and such amount would result in the interest rate charged hereunder exceeding the maximum rate permitted by applicable law, such amount will be applied to reduce principal of the *Factoring Facility* or, if no amounts payable to FLEXIBLE FUNDING pursuant to this Agreement remain outstanding, will be refunded to GRAHAM COUNTY LAND COMPANY.

62.    This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

*[SIGNATURE PAGE IMMEDIATELY FOLLOWS]*

DocuSign Envelope ID: B5EE5598-66C0-428B-AD07-DE0FF86D2499

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement effective July 22, 2019.

*for* FLEXIBLE FUNDING LTD. LIABILITY CO.

_____
Steve Capper
67BF06D783444E3...

_____
Paul DeLuca
C7C5070615CE405...

*for* GRAHAM COUNTY LAND COMPANY, L.L.C.

_____
Name: Randy Jordan
C934F5437AEE440...

Title: Member _____

# EXHIBIT B

File Number: 20140038281M
Date Filed: 4/24/2014 5:08:00 PM
Elaine F. Marshall
NC Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
NORMA HENRIQUEZ

B. E-MAIL CONTACT AT FILER (optional)
ANGELINA.VELASQUEZ@FICOSO.COM

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

FIRST CORPORATE SOLUTIONS
914 S STREET
SACRAMENTO, CA 95814

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name; if any part of the Individual Debtor's name will not fit in line 1b leave all of item 1 blank, check here [ ] and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GRAHAM COUNTY LAND COMPANY, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 750 TALLULAH ROAD | ROBBINSVILLE | NC | 28771 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b leave all of item 2 blank, check here [ ] and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GRAHAM COUNTY LAND COMPANY, L.L.C. | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTR |
| 750 TALLULAH ROAD | ROBBINSVILLE | NC | 28771 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| DB SQUARED, INC. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 33320 9TH AVE S, SUITE 200 | FEDERAL WAY | WA | 98003 | USA |

4. COLLATERAL: This financing statement covers the following collateral

All assets of Debtor, wherever located, now owned or hereafter acquired or created, all proceeds and products of the foregoing, all additions and accessions thereto, and all rents, profits, and issues thereof.

The terms of the contract between Secured Party and Debtor prohibit Debtor from (i) selling, factoring or otherwise financing any of its accounts with a party other than Secured Party, and (ii) granting security interest in its assets. The further encumbering of which may constitute the tortious interference with the Secured Party's right by such encumbrance.

In the event that any entity is granted a security interest in any assets of Debtor contrary to the above, the Secured Party asserts a claim to any proceeds thereof received by such entity.

Public notice of this agreement is hereby given.

5. Check only if applicable and check only one box. Collateral is [ ] held in a Trust (see UCC1Ad item 17 and Instructions)   [ ] being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box   6b. Check only if applicable and check only one box
[ ] Public-Finance Transaction   [ ] Manufactured-Home Transaction   [ ] A Debtor is a Transmitting Utility   [ ] Agricultural Lien   [ ] Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): [ ] Lessee/Lessor   [ ] Consignee/Consignor   [ ] Seller/Buyer   [ ] Bailee/Bailor   [ ] Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA
[UCC1-78177]

File Number: 20140099525J
Date Filed: 10/23/2014 5:01:00 PM
Elaine F. Marshall
NC Secretary of State

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
NORMA HENRIQUEZ

B. E-MAIL CONTACT AT FILER (optional)
ANGELINA.VELASQUEZ@FICOSO.COM

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

⌐ FIRST CORPORATE SOLUTIONS ¬
914 S STREET
SACRAMENTO, CA 95814
∟                                          ⌋

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 20140038281M | Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7 and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE

Check one of these two boxes                                        AND   Check one of these three boxes to
This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address Complete   ☐ ADD name: Complete item   ☐ DELETE name: Give record name
                                                              item 6a or 6b, and item 7a or 7b and item 7c    7a or 7b, and item 7c         to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GRAHAM COUNTY LAND COMPANY, L.L.C. | | | |
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ COLLATERAL CHANGE  Also check one of these four boxes    ☐ ADD collateral   ☐ DELETE collateral   ☑ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral

All presently existing or hereafter arising, now owned or hereafter acquired, accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserves, reserve accounts, and general intangibles, and all books and records pertaining to accounts and all the proceeds of the foregoing property.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DB SQUARED, INC. | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
[UCC3-78177.1]

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT  Form UCC3) (Rev 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: 1-877-863-5600 Fax

This filing is Completed
File Number : 20170052651M
File Date  - 20-May-2017

**B. E-MAIL CONTACT AT FILER (optional)**
kim kringen@firstlinefundinggroup com

**C SEND ACKNOWLEDGMENT TO: (Name and Address)**    22747 - FIRST LINE

KIM KRINGEN                          58986494
PO BOX 388
MAD SON SD 57042                    NCNC

File with  Secretary of State  NC

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a INIT AL FINANC NG STATEMENT FILE NUMBER**
20140038281M  4/24/2014  SS NC

**1b ☐** This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer  attach Ame dm nt Addendum (Form UCC3A) and provide Debtor's name in item 13

**2 ☐ TERMINAT ON:** Effectiveness o the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3 ☒ ASS GNMENT (full or partial)** Provide name of Assignee in item 7a or 7b and address of Assignee in item 7c and name of Assignor in item 9
For partia assignment complete items 7 and 9 and also indicate affected collateral in item 8

**4 ☐ CONT NUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5 ☐ PARTY NFORMAT ON CHANGE**

Check one of hese two   x
This Change affects ☐ Debtor or ☐ Se   d Party f record

AND Check one of th  s  three boxes t
☐ CHANGE name and/or address  Complet
item 6a or 6b and item 7a or 7b and item 7c
☐ ADD name  Complete item
7a or 7b, and item 7c
☐ DELETE name: Give record name
to be deleted in item 6a or 6b

**6 CURRENT RECORD INFORMATION**  Complete  or Party nformation Change  provide only one name (6a  r 6b

| 6a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7 CHANGED OR ADDED INFORMATION**  Complete for Assignment or Party Information Change   provide only one name (7a or 7b  oes  not full name  do not omit, modify  or abbreviate any part of the Debtor's name

| 7a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIRST BANK & TRUST | | | |
| 7b INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 120 N EGAN AVE., PO BOX 488 | MADISON | SD | 57042 | USA |

**8 ☐ COLLATERAL CHANGE,  Also check one of these four boxes** ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**   Provide only one name (9a or 9b) (name of Assignor  if this is an Assignment)
f this is an Amendment authorized by a DEBTOR check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DB SQUARED, INC | | | |
| 9b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | |

**10 OPTIONAL FILER REFERENCE DATA** Debtor Name  GRAHAM COUNTY LAND COMPANY L.L.C
58986494                  GRAHAM CO LAND CO UCC3

Prepared by Lien Solutions, P O. Box 29071
Glendale  CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>Phone: (800) 331-3282 Fax: (818) 662-4141 | **This filing is Completed**<br>File Number : 20190033998F<br>File Date : 02-Apr-2019 |
|---|---|

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions                    69219370
P O. Box 29071
Glendale  CA  91209-9071          NCNC

File with: Secretary of State, NC

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20140038281M  4/24/2014  SS NC

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 3

2. ☐ TERMINATION Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial) Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment complete items 7 and 9 and also indicate affected collateral in item 8

4. ☒ CONTINUATION Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE
Check one of the two boxes                AND   Check one of the three boxes
This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address  Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name  Give record name to be deleted in item 6a or 6

6. CURRENT RECORD INFORMATION  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION. Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE  Also check one of these four boxes  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT  Provide only one name (9a or 9b) (name of Assignor if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **FIRST BANK & TRUST** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA. Debtor Name: GRAHAM COUNTY LAND COMPANY L.L.C
69219370

Prepared by Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

File Number: 20190078550J
Date Filed: 7/23/2019 2:27:00 PM
Elaine F. Marshall
NC Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Corporation Service Company**

B. E-MAIL CONTACT AT FILER (optional)
**FilingDept@cscinfo.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**Corporation Service Company**
**801 Adlai Stevenson Dr**
**Springfield, IL 62703**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GRAHAM COUNTY LAND COMPANY, L.L.C. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 750 Tallulah Road | Robbinsville | NC   28771 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Corporation Service Company, as Representative | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| P.O. Box 2576   uccsprep@cscinfo.com | Springfield | IL   62708 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets, whether tangible or intangible, wherever located, and whether owned, created, acquired or arising prior to, on or after the date of filing of this UCC-1 financing statement, and all products and proceeds of the foregoing.

Notice: (1) retention of any cash or non-cash products or proceeds of any of the foregoing by any person violates the rights of the Secured Party named herein to such collateral, (2) Debtor has agreed not to grant a security interest in, on or to, or to pledge, assign, encumber or otherwise hypothecate any of the foregoing collateral, products or proceeds other than in favor of the Secured Party named herein, and (3) any security interest in, on or to, or pledge, assignment, encumbrance or other hypothecation of any of such collateral, products or proceeds other than in favor of the Secured Party named herein violates the terms of Debtor's agreements with the Secured Party named herein and the rights of the Secured Party named herein to such collateral, products and proceeds.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[1673781811]

# EXHIBIT C

# TOTEM MATS

Invoice

**BILL TO**
GRAHAM COUNTY LAND COMPANY, LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC 28771

**SHIP TO**
CHERAW, SG
JOE HOOKS
828 735 6083

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|-----------|------|-----------|----------|-------|----------|
| 1641 | 01/09/2020 | $374,250.00 | 02/08/2020 | Net 30 | |

| PO NUMBER | DELIVERY TERMS | SALES REP |
|-----------|----------------|-----------|
| 6019051 | DELIVERED | JAY |

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|-------------|----------|------|--------|
| 8"X4"X16" NEW HARDWOOD MATS | 998 | 375.00 | 374,250.00 |

**BALANCE DUE** **$374,250.00**

Remit to:

Preferred Payment Method of Wire/ACH:

First Interstate Bank

Deposit Account:    106587389

Routing Number:    092901683

Check:

Totem Forest Products International LLC

P. O. Box 5911

Beaverton, OR 97006

11996

## TOTEM MATS

**Invoice**

**BILL TO**
GRAHAM COUNTY LAND COMPANY, LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC  28771

**SHIP TO**
CHERAW, SC

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 1658 | 01/29/2020 | $393,212.00 | 02/28/2020 | Net 30 | |

| PO NUMBER | DELIVERY TERMS | SALES REP |
|---|---|---|
| 60190512 | DELIVERED | JAY |

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|---|---|---|---|
| 8X4X16 NEW HW MAT, NOTCHED. | 998 | 394.00 | 393,212 00 |

BALANCE DUE

**$393,212.00**

Remit to:

Preferred Payment Method of Wire/ACH:

First Interstate Bank

Deposit Account:   106587389

Routing Number:   092901683

Check:

Totem Forest Products International LLC

P. O. Box 5911

Beaverton, OR 97006

DocuSign Envelope ID: 23265264-59D6-4C84-946D-1879A0ADEC40

# TOTEM MATS

# Credit Memo

CREDIT TO

GRAHAM COUNTY LAND COMPANY,
LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC  28771

CREDIT #  1664
DATE  01/31/2020

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|---|---|---|---|
| 8"X4'X16' NEW HARDWOOD TIMBER MATS, NOTCHED | 1 | 375.00 | 375.00 |

1185-23
One mat was removed from truck.

TOTAL CREDIT

## $375.00

Remit to:

Preferred Payment Method of Wire/ACH:
First Interstate Bank
Deposit Account:   106587389
Routing Number:   092901683

Check:
Totem Forest Products International LLC
P. O. Box 5911
Beaverton, OR 97006

11995
601-7751-02

# ◤◢◤ TOTEM MATS

## Invoice

**BILL TO**
GRAHAM COUNTY LAND COMPANY, LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC  28771

**SHIP TO**
GRAHAM COUNTY LAND
WALLACE, SC

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 1695 | 03/10/2020 | $197,500.00 | 04/09/2020 | Net 30 | |

| PO NUMBER | DELIVERY TERMS | SALES REP |
|---|---|---|
| 60190512 | DELIVERED | JAY |

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|---|---|---|---|
| 8X4X16 NEW HW SOLID MATS | 500 | 395.00 | 197,500.00 |

BALANCE DUE

## $197,500.00

Remit to:

Preferred Payment Method of Wire/ACH·
First Interstate Bank
Deposit Account:    106587389
Routing Number:    092901683

Check:
Totem Forest Products International LLC
P O. Box 5911
Beaverton, OR 97006

# TOTEM MATS

## Invoice

**BILL TO**
GRAHAM COUNTY LAND COMPANY, LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC 28771

**SHIP TO**
GRAHAM COUNTY LAND COMPANY, LLC
WALLACE, SC

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 1697 | 03/13/2020 | $206,000.00 | 04/12/2020 | Net 30 | |

| PO NUMBER | DELIVERY TERMS | SALES REP |
|---|---|---|
| 60190513 | DELIVERED | JAY |

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|---|---|---|---|
| 8X4X16 NEW HW SOLID MATS | 500 | 412.00 | 206,000.00 |

BALANCE DUE

**$206,000.00**

Remit to:

Preferred Payment Method of Wire/ACH

First Interstate Bank

Deposit Account:   106587389

Routing Number:   092901683

Check:

Totem Forest Products International LLC

P. O. Box 5911

Beaverton, OR 97006

DocuSign Envelope ID: 23265264-59D6-4C84-946D-1870A0ADEC10

# TOTEM MATS                                    Invoice

**BILL TO**                                    **SHIP TO**
GRAHAM COUNTY LAND COMPANY, LLC                CHERAW, SC
750 TALLULAH ROAD
ROBBINSVILLE, NC  28771

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|-----------|------|-----------|----------|-------|----------|
| 1710 | 03/25/2020 | $423,444 00 | 04/24/2020 | Net 30 | |

| PO NUMBER | DELIVERY TERMS | SALES REP |
|-----------|----------------|-----------|
| 6019053 | DELIVERED | JAY |

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|-------------|----------|------|--------|
| 8X4X16 NEW HW SOLID MATS | 994 | 426 00 | 423,444.00 |

BALANCE DUE                                    **$423,444.00**

Remit to:

Preferred Payment Method of Wire/ACH
First Interstate Bank
Deposit Account:   108587389
Routing Number:   092901683

Check:
Totem Forest Products International LLC
P. O. Box 5911
Beaverton, OR 97006

### ◤◣ TOTEM MATS

### Invoice

**BILL TO**
GRAHAM COUNTY LAND COMPANY, LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC 28771

**SHIP TO**
GRAHAM COUNTY LAND COMPANY, LLC
750 TALLULAH ROAD
ROBBINSVILLE, NC 28771

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 1718 | 03/31/2020 | $429,408.00 | 04/30/2020 | Net 30 | |

| PO NUMBER | DELIVERY TERMS | SALES REP |
|---|---|---|
| 6019054 | DELIVERED | JAY |

| DESCRIPTION | QUANTITY | RATE | AMOUNT |
|---|---|---|---|
| 8X4X16 NEW HW SOLID MATS | 1,008 | 426 00 | 429,408.00 |

BALANCE DUE

## $429,408.00

Remit to:

Preferred Payment Method of Wire/ACH:
First Interstate Bank
Deposit Account:    106587389
Routing Number:    092901683

Check:
Totem Forest Products International LLC
P. O. Box 5911
Beaverton, OR 97006

1.995

# EXHIBIT D

**From:** Trevor Sarazin <trevor@totemmats.com>
**Sent:** Friday, September 11, 2020 12:47 PM
**To:** Randy Jordan <randy@gclnc.com>
**Subject:** Past due AR and mats in Cheraw, SC

Hi Randy,

As we've discussed, the outstanding accounts receivable balance for Graham County Land Clearing currently stands at $1,199,189.00.  To help decrease this balance, Totem will offer to purchase the mats back from Graham at $160.00 per mat for a total of $800,000.00, which will be deducted from the outstanding amount owed, and bring the remaining balance to $399,189.00.  Totem will write a reasonable interest rate note, signed by Graham, to pay off the balance via weekly payments that Graham is comfortable with.  If Graham is able to secure a buyer for the mats, Totem will handle the transaction directly and reduce the outstanding balance by any profit above the initial purchase price, less an agreed upon fee to cover additional finance charges.

I know it's not an optimal solution, however the fact is Totem has been acting as Graham's bank through this for a while, and we're to the point that simply cannot go on any longer.  The alternative of not getting something done today isn't a road I want to go down, and am guessing you don't either, so I'm trying to figure out a solution that hurts us both the least here.

Let me know if we can make this work ASAP and I'll put some at least preliminary paperwork together that will suffice.

Trevor

**Trevor Sarazin**
Totem Mats
*P*: 866.777.MATS (6287) *toll free*  |  *503.471.5733 local direct*
*C*: 503.757.0710
***Email:*** *Trevor@TotemMats.com*
*www.TotemMats.com*



# EXHIBIT E

# PROMISSORY NOTE

September 28th, 2020                                                                          $399,189.00

FOR VALUE RECEIVED, Graham County Land Company, L.L.C., a North Carolina limited liability company ("Maker"), hereby unconditionally promises to pay to the order of Totem Forest Products International LLC, an Oregon limited liability company ("Holder"), the principal sum of THREE HUNDRED NINETY-NINE THOUSAND ONE HUNDRED EIGHTY-NINE DOLLARS AND NO/100 ($399,189.00), in lawful money of the United States of America, with interest thereon as provided below, payable in the manner and according to the terms and conditions set forth in this promissory note (this "Note"). All payments shall be delivered to Holder at such address as Holder may designate in writing from time to time. The "Effective Date" of this Note is the date first written above.  This Note is issued to evidence indebtedness owed by Maker to Holder for certain products sold to Maker by Holder.

1.  Interest Rate. This principal balance of this Note, together with any accrued but unpaid interest thereon, shall bear interest at a rate of: (a) six percent (6%) per annum until the four-month (4-month) anniversary of the Effective Date; and (b) twelve percent (12%) thereafter until repaid in full.

2.  Maturity Date. Maker shall pay the entire balance of principal and accrued but unpaid interest and any other amounts owed hereunder on the earlier of (the "Maturity Date"): (a) May 26, 2022; (b) upon demand of Holder following an Event of Default by Maker; or (c) the closing date of (i) a sale of all or substantially all of the assets of Maker other than in the ordinary course of business or (ii) a change in the voting control of Maker, whether by sale, merger or otherwise.

3.  Weekly Payments. Until this Note is paid in full, Maker shall make payments to Holder on a weekly basis in the amount of $5,000, beginning on the Effective Date.  Maker agrees to make a good faith effort to increase the weekly payment amount in order to payoff the loan as soon as practicable.

4.  Default Interest. If any amount payable under this Note is not paid when due (without regard to any applicable grace periods), the outstanding loan balance (including accrued but unpaid interest) shall bear interest at a rate equal to the lesser of eighteen percent (18%) (or the maximum rate allowable under applicable law) from the date payment was due until such delinquent payment is paid in full. This provision does not imply that Maker may cure any default or Event of Default after an Event of Default other than as expressly permitted hereunder, nor shall this provision imply that Maker has a right to delay or extend the dates upon which payments are due hereunder.

5.  Prepayments. Maker shall have the right to prepay all or part of the outstanding balance of this Note before the Maturity Date without penalty. In the event Maker makes a partial prepayment of this Note, such prepaid amount shall first be applied to the payment of interest, and then to principal.

6.  Late Charge.  If any payment of any sum due under this Note is not paid within three (3) business days of the due date (notwithstanding any grace or cure periods contained

4816-9007-4571, v. 3

herein), Holder shall have the option to charge Maker a late charge equal to fifteen percent (15%) of the missed payment (the "Late Charge"). The Late Charge is for the purpose of defraying the expenses incurred in connection with handling and processing delinquent payments and is payable in addition to any other remedy Holder may have. Unpaid Late Charges shall be paid with next payment due. Additional Late Charges may be charged by Holder in the event any Late Charges are not made when due.

7.    Events of Default. Maker is immediately in default under the terms and conditions of this Note (each, an "Event of Default") in the event:

(a)    Maker fails to deliver to Holder the entire amount of any payment due hereunder within three (3) business days after the payment due date;

(b)    Except for Maker's payment obligations hereunder, Maker fails to comply with any obligation, term, condition, covenant, representation, warranty or other duty arising under this Note within fifteen (15) days after written notice to Maker by Holder; or

(c)    If Maker shall (i) discontinue business, (ii) generally not pay its debts as such debts become due, (iii) make a general assignment for the benefit of creditors, (iv) apply for or consent to the appointment of a receiver, a custodian, a trustee, an interim trustee or liquidator of all or a substantial part of its assets, (v) be adjudicated a debtor or have entered against it an order for relief under Title 11 of the United States Code, as the same may be amended from time to time, (vi) file a voluntary petition in bankruptcy or file a petition or an answer seeking reorganization or an arrangement with creditors or seeking to take advantage of any other law (whether federal or state) relating to relief of debtors, or admit (by answer, by default or otherwise) the material allegations of a petition filed against it in any bankruptcy, reorganization, insolvency or other proceeding (whether federal or state) relating to relief of debtors, or (vii) suffer or permit to continue unstayed and in effect for sixty (60) consecutive days any judgment, decree or order entered by a court of competent jurisdiction, that approves a petition seeking its reorganization or appoints a receiver, custodian, trustee, interim trustee or liquidator of all or a substantial part of its assets.

8.    Acceleration; Remedies. Upon the occurrence of an Event of Default, Holder shall be entitled to exercise any or all of the following remedies, without limitation: (a) Holder may declare the principal sum of this Note, together with any accrued but unpaid interest and any other amounts owed to Holder under this Note, to be immediately due and payable; and (b) the right to exercise any other remedy available to Holder, at law or in equity. Any forbearance or failure to exercise a right shall not constitute a waiver of Holder's right to exercise such right with respect to such default and any subsequent default.

9.    Attorney Fees, Costs. In the event Holder takes any action, judicial or otherwise, to enforce any rights or collect any amounts due under this Note, Maker shall be responsible for paying all expenses which Holder may incur in taking such action, including, but not limited to, reasonable attorney fees and costs incurred by Holder (including with respect to any appeals). Upon demand, Maker shall pay to and reimburse Holder for all such fees, costs and expenses so incurred, and hereby indemnifies Holder and holds it harmless from and against all such fees, costs and expenses.

10.    Assignment. Maker shall not assign its obligations under this Note without express written consent of Holder, which consent may be withheld in Holder's sole discretion. Holder may assign this Note in its sole discretion to any affiliate of Holder or any successor to Holder's business, in which event, the assignee shall become the Holder for all purposes.

11.    Notice.  Any notice required or permitted pursuant to this Note shall be in writing and shall be deemed sufficient upon delivery, when delivered personally or sent by courier, overnight delivery service or confirmed facsimile or email, or three (3) business days after being deposited in the U.S. mail, as certified or registered mail (airmail if sent internationally), with postage prepaid, addressed to the party's address set forth below or subsequently modified by written notice to the other party.

12.    Power and Authority. Maker represents that Maker has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes a valid and binding obligations of Maker.

13.    Governing Law; Venue. This Note shall be governed and construed in accordance with the laws of the State of Oregon. Any suit or action brought on this Note by Maker shall be brought exclusively in the courts of Multnomah County, Oregon. Any suit or action brought on this Note by Holder may be brought in any appropriate state or federal court at Holder's discretion.

14.    Waiver of Jury Trial. MAKER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, EQUITY, TORT OR ANY OTHER THEORY.

15.    Waiver of Notice. Maker hereby waives presentment, demand for payment, protest, notice of dishonor, notice of protest or nonpayment, notice of intent to accelerate, notice of acceleration of maturity and diligence in connection with the enforcement of this Note or the taking of any action to collect sums owing hereunder. The rights, remedies, powers, and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law or available in equity.

16.    Bankruptcy. Maker agrees that any payment under this Note which is avoided in a later bankruptcy proceeding or otherwise shall not be deemed a payment, and Maker's obligations under the Note shall be reinstated and/or supplemented to the extent of any payment so avoided. In such event, Maker shall not be discharged even if this Note has been cancelled, renounced or surrendered.

17.    Severability. If any term or provision of this Note is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Note or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties hereto shall negotiate in good faith to modify this Note so as to effect the original intent of the parties as closely as possible in order that the

PAGE 3 – PROMISSORY NOTE

transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

18.      Amendments and Waivers. No term of this Note may be waived, modified, or amended except by an instrument in writing signed by both of the parties hereto. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

19.      Counterparts; Signatures.    This Note may be executed in any number of counterparts, all of which when taken together shall constitute one agreement binding on all parties, notwithstanding that all parties are not signatories to the same counterpart. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000) or other transmission method and any counterpart so delivered shall be deemed an original and shall be binding upon each of the undersigned as if signed and delivered in the original.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER OREGON LAW.**

[SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the undersigned has caused this Note to be duly executed on the day and year first written above.

**MAKER**:

Graham County Land Company, L.L.C.


By: _____
Name: _____
Its: _____

Notice Address:

_____
_____
_____
Email: _____


*AGREED AND ACCEPTED*:

**HOLDER**:

Totem Forest Products International LLC


By: _____
Name: _____
Its: _____

Notice Address:

_____
_____
_____
Email: _____


[SIGNATURE PAGE TO PROMISSORY NOTE]

# EXHIBIT F

# Northern District of Texas
# Claims Register

## 21-42215-mxm11 Flexible Funding, Ltd. Liability Co.

**Judge:** Mark X. Mullin       **Chapter:** 11
**Office:** Ft. Worth          **Last Date to file claims:** 12/22/2021
**Trustee:**                   **Last Date to file (Govt):** 05/11/2022

| | | |
|---|---|---|
| *Creditor:*      (19516655)<br>Fresh Packing Corporation<br>Raymond Perez, Esq.<br>5161 Pomona Blvd Suite 208<br>Los Angeles, CA 90022 | **Claim No: 1**<br>*Original Filed Date*: 09/27/2021<br>*Original Entered Date*: 09/27/2021 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Admin<br>*Modified:* |

 Amount claimed: $13050.00

*History:*

Details    1-1    09/27/2021 Claim #1 filed by Fresh Packing Corporation, Amount claimed: $13050.00 (Admin)

*Description:*
*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (19514528)<br>PAHL & McCAY<br>225 West Santa Clara St<br>Ste 1500<br>San Jose, CA 95113-1700 | **Claim No: 2**<br>*Original Filed Date*: 10/14/2021<br>*Original Entered Date*: 10/14/2021 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Admin<br>*Modified:* |

 Amount  claimed: $120036.79
 Secured claimed: $120036.79

*History:*

Details    2-1    10/14/2021 Claim #2 filed by PAHL & McCAY, Amount claimed: $120036.79 (Admin)

*Description:*
*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (19514526)<br>Omninet CV Townsgate, LLC<br>9420 Wilshire Blvd.<br>#400<br>Beverly Hills, CA 90212 | **Claim No: 3**<br>*Original Filed Date*: 10/14/2021<br>*Original Entered Date*: 10/14/2021 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Brandon Scot Pierce<br>*Modified:* |

 Amount claimed: $19178.60

*History:*

Details    3-1    10/14/2021 Claim #3 filed by Omninet CV Townsgate, LLC, Amount claimed: $19178.60 (Pierce, Brandon)

*Description:* (3-1) Real Estate Lease
*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (19541534)<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808 | **Claim No: 4**<br>*Original Filed Date*: 11/09/2021<br>*Original Entered Date*: 11/09/2021 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Admin<br>*Modified:* |

Amount claimed: $514.00

*History:*

Details    4-1    11/09/2021 Claim #4 filed by Corporation Service Company, Amount claimed: $514.00 (Admin)

*Description:*
*Remarks:*

History:

Details  ⊙    4-1    11/09/2021 Claim #4 filed by Corporation Service Company, Amount claimed: $514.00 (Admin)

Description:

Remarks:

---

Creditor:        (19543683)          **Claim No: 5**                  Status:
Robinn Mikalic                       Original Filed Date: 11/12/2021   Filed by: CR
1949 Lakeside Drive                  Original Entered Date: 11/12/2021 Entered by: Admin
Harveys Lake PA 18618                Last Amendment Filed: 12/06/2021  Modified: 12/06/2021
                                     Last Amendment Entered: 12/06/2021

  Amount claimed: $14895.00
  Priority  claimed:  $4960.00

History:

Details  ⊙    5-1    11/12/2021 Claim #5 filed by Robinn Mikalic, Amount claimed: $1489554.00 (Robertson, Catherine)
Details  ⊙    5-2    12/06/2021 Amended Claim #5 filed by Robinn Mikalic, Amount claimed: $14895.00 (Admin)

Description:

Remarks:

---

Creditor:        (19543684)          **Claim No: 6**                  Status: Withdraw 479
Christopher Oliverio                 Original Filed Date: 11/12/2021   Filed by: CR
1612 Buckingham Avenue               Original Entered Date: 11/12/2021 Entered by: Catherine Scholomann
Lincoln Park, MI 48146                                                Robertson
                                                                     Modified:

  Amount claimed: $5576.00

History:

Details  ⊙    6-1    11/12/2021 Claim #6 filed by Christopher Oliverio, Amount claimed: $5576.00 (Robertson, Catherine)
              479    11/22/2022 Withdrawal of claim(s): 6 Filed by Creditor Christopher Oliverio . (Hartogh, Kristina) Status:
                                Withdraw

Description:

Remarks:

---

Creditor:        (19514548)          **Claim No: 7**                  Status:
Voco Vilya, Inc.                     Original Filed Date: 11/12/2021   Filed by: CR
6905 Peppervine Cove                 Original Entered Date: 11/12/2021 Entered by: Admin
Austin, TX 78750                     Last Amendment Filed: 12/06/2021  Modified: 12/06/2021
                                     Last Amendment Entered: 12/06/2021

  Amount claimed: $70290.00

History:

Details  ⊙    7-1    11/12/2021 Claim #7 filed by Voco Vilya, Inc., Amount claimed: $7029041.00 (Robertson, Catherine)
Details  ⊙    7-2    12/06/2021 Amended Claim #7 filed by Voco Vilya, Inc., Amount claimed: $70290.00 (Admin)

Description:

Remarks:

---

Creditor:        (19514521)          **Claim No: 8**                  Status:
Maher Accountancy                    Original Filed Date: 11/15/2021   Filed by: CR
1101 Fifth Avenue                    Original Entered Date: 11/15/2021 Entered by: Tracy Nunns
                                                                     Modified:

History:

Details  ⊙    8-1    11/15/2021 Claim #8 filed by Maher Accountancy, Amount claimed: $31010.00 (Nunns, Tracy)

Description:

Remarks:

Suite 200
San Rafael, CA 94901

 Amount claimed: $31010.00

*History:*

**Details**  ⚫  **8-1**   11/15/2021 Claim #8 filed by Maher Accountancy, Amount claimed: $31010.00 (Nunns, Tracy)

*Description:*
*Remarks:*

| *Creditor:*   (19553395) | **Claim No: 9** | *Status:* |
|---|---|---|
| Flexible Support Group, LLC | *Original Filed Date*: 12/01/2021 | *Filed by:* CR |
| Lizabeth Ardisana | *Original Entered Date*: 12/01/2021 | *Entered by:* Admin |
| 2226 Garrison Street | | *Modified:* |
| Dearborn, MI 48124 | | |

 Amount claimed: $151769.24

*History:*

**Details**  ⚫  **9-1**   12/01/2021 Claim #9 filed by Flexible Support Group, LLC, Amount claimed: $151769.24 (Admin)

*Description:*
*Remarks:*

| *Creditor:*   (19555945) | **Claim No: 10** | *Status:* |
|---|---|---|
| Umpqua Bank | *Original Filed Date*: 12/06/2021 | *Filed by:* CR |
| 7777 Alvarado Road | *Original Entered Date*: 12/06/2021 | *Entered by:* Admin |
| Suite 501 | | *Modified:* |
| La Mesa, CA 91942 | | |

 Amount claimed: $489250.62

*History:*

**Details**  ⚫  **10-1**   12/06/2021 Claim #10 filed by Umpqua Bank, Amount claimed: $489250.62 (Admin)

*Description:*
*Remarks:* (10-1) Account Number (last 4 digits):6951

| *Creditor:*   (19561845) | **Claim No: 11** | *Status:* |
|---|---|---|
| Medalist Partners Opportunity Master | *Original Filed Date*: 12/15/2021 | *Filed by:* CR |
| Fund II-A, L. | *Original Entered Date*: 12/15/2021 | *Entered by:* Admin |
| Holland & Knight, Attn: Brent McIlwain | | *Modified:* |
| One Arts Plaza | | |
| 1722 Routh Street, Suite 1500 | | |
| Dallas, TX 75201 | | |

 Amount claimed: $15700000.00

*History:*

**Details**  ⚫  **11-1**   12/15/2021 Claim #11 filed by Medalist Partners Opportunity Master Fund II-A, L., Amount claimed: $15700000.00 (Admin)

*Description:*
*Remarks:* (11-1) Filer Comment: See Attached

| *Creditor:*   (19520313) | **Claim No: 12** | *Status:* |
|---|---|---|
| The Original Mowbrays Tree Service Inc. | *Original Filed Date*: 12/15/2021 | *Filed by:* CR |
| c/o Paul D. Moak - Matthew Wilbert Bourd | *Original Entered Date*: 12/15/2021 | *Entered by:* Paul D. Moak |
| GRAY REED | | *Modified:* |

*History:*

**Details**  ⚫  **12-1**   12/15/2021 Claim #12 filed by The Original Mowbrays Tree Service Inc., Amount claimed: $5519497.83 (Moak, Paul)

*Description:*
*Remarks:*

1300 Post Oak Blvd, Suite 2000
Houston, Texas 77056

  Amount claimed: $5519497.83

*History:*

**12-1**    12/15/2021 Claim #12 filed by The Original Mowbrays Tree Service Inc., Amount claimed: $5519497.83
            (Moak, Paul)

*Description:*
*Remarks:*


| *Creditor:*    (19562790) | **Claim No: 13** | *Status:* |
| Ward and Smith, P.A. | *Original Filed Date*: 12/17/2021 | *Filed by:* CR |
| c/o Lance P. Martin, Esq. | *Original Entered Date*: 12/17/2021 | *Entered by:* Admin |
| Post Office Box 2020 | | *Modified:* |
| Asheville, NC 28802-2020 | | |

  Amount claimed: $81632.37

*History:*

**13-1**    12/17/2021 Claim #13 filed by Ward and Smith, P.A., Amount claimed: $81632.37 (Admin)

*Description:*
*Remarks:* (13-1) Account Number (last 4 digits):1097


| *Creditor:*    (19563014) | **Claim No: 14** | *Status:* |
| Cheng Te Liao | *Original Filed Date*: 12/17/2021 | *Filed by:* CR |
| 940 Camino Verde Circle | *Original Entered Date*: 12/17/2021 | *Entered by:* Admin |
| Walnut Creek, CA 94597 | | *Modified:* |
| , | | |

  Amount claimed: $23084.00
  Priority  claimed: $13650.00

*History:*

**14-1**    12/17/2021 Claim #14 filed by Cheng Te Liao, Amount claimed: $23084.00 (Admin)

*Description:*
*Remarks:*


| *Creditor:*    (19514484) | **Claim No: 15** | *Status:* |
| Bison Investors LLC, c/o Levinson, Arsho | *Original Filed Date*: 12/21/2021 | *Filed by:* CR |
| 15303 Ventura Blvd. | *Original Entered Date*: 12/21/2021 | *Entered by:* Admin |
| Suite 1650 | | *Modified:* |
| Sherman Oaks, CA 91403 | | |

  Amount  claimed: $2000000.00
  Secured claimed: $2000000.00

*History:*

**15-1**    12/21/2021 Claim #15 filed by Bison Investors LLC, c/o Levinson, Arsho, Amount claimed: $2000000.00
            (Admin)

*Description:*
*Remarks:*


| *Creditor:*    (19564791) | **Claim No: 16** | *Status:* |
| Instapay Flexible, LLC | *Original Filed Date*: 12/22/2021 | *Filed by:* CR |
| 121 San Anselmo | | |

*History:*

**16-1**    12/22/2021 Claim #16 filed by Instapay Flexible, LLC, Amount claimed: (Prostok, Jeff)

*Description:* (16-1) See attached addendum
*Remarks:*

Box 2604
San Anselmo, CA 94979
*No amounts claimed*

*History:*

Details    🔵    16-1    12/22/2021 Claim #16 filed by Instapay Flexible, LLC, Amount claimed: (Prostok, Jeff)

*Description:* (16-1) See attached addendum

*Remarks:*


| Creditor: | (19565059) | **Claim No: 17** | | *Status:* |
| Levinson Arshonsky & Kurtz, LLP | | *Original Filed Date:* 12/22/2021 | | *Filed by:* CR |
| c/o Steven N. Kurtz | | *Original Entered Date:* 12/22/2021 | | *Entered by:* Admin |
| 15303 Ventura Blvd | | | | *Modified:* |

Suite 1650
Sherman Oaks, CA 91403

  Amount claimed: $25081.70

*History:*

Details    17-1    12/22/2021 Claim #17 filed by Levinson Arshonsky & Kurtz, LLP, Amount claimed: $25081.70 (Admin)

*Description:*

*Remarks:* (17-1) Account Number (last 4 digits):3238


Creditor:    (19514529)    **Claim No: 18**    *Status:*
Paul DeLuca    *Original Filed Date:* 12/22/2021    *Filed by:* CR
4900 Gage Ave.    *Original Entered Date:* 12/22/2021    *Entered by:* Jeff P. Prostok
Apt 347    *Modified:*
Fort Worth, TX 76109
*No amounts claimed*

*History:*

Details    🔵    18-1    12/22/2021 Claim #18 filed by Paul DeLuca, Amount claimed: (Prostok, Jeff)

*Description:* (18-1) Any and all expenses and liabilities incurred connection with the Mowbray action

*Remarks:* (18-1) Indemnity against complaint based on Flexible Funding Ltd. Liability Co. Operating Agree


Creditor:    (19514536)    **Claim No: 19**    *Status:*
Steve Capper    *Original Filed Date:* 12/22/2021    *Filed by:* CR
1350 Butterfield Road    *Original Entered Date:* 12/22/2021    *Entered by:* Jeff P. Prostok
San Anselmo, CA 94960    *Modified:*
*No amounts claimed*

*History:*

Details    🔵    19-1    12/22/2021 Claim #19 filed by Steve Capper, Amount claimed: (Prostok, Jeff)

*Description:* (19-1) Any and all expenses and liabilities incurred in connection with the Mowbray Action.

*Remarks:* (19-1) Indemnity against complaint based on Flexible Funding Ltd. Liability Co. Operating Agreement


Creditor:    (19514536)    **Claim No: 20**    *Status:*
Steve Capper    *Original Filed Date:* 12/22/2021    *Filed by:* CR
1350 Butterfield Road    *Original Entered Date:* 12/22/2021    *Entered by:* Jeff P. Prostok
San Anselmo, CA 94960    *Modified:*

  Amount claimed: $1821574.06

*History:*

Details    🔵    20-1    12/22/2021 Claim #20 filed by Steve Capper, Amount claimed: $1821574.06 (Prostok, Jeff)

*Description:* (20-1) Claims arising out of guaranty on loan from The Steve and Jyoti Elias Trust and Steve Elias

*Remarks:*

*Creditor:*      (19565562)
Bill Hansen
1332 So 2670 E
St. George, UT 84790
*No amounts claimed*

**Claim No: 21**
*Original Filed Date*: 12/22/2021
*Original Entered Date*: 12/22/2021

*Status:*
*Filed by:* CR
*Entered by:* Jeff P. Prostok
*Modified:*

*History:*

Details   ⬤   21-1   12/22/2021 Claim #21 filed by Bill Hansen, Amount claimed: (Prostok, Jeff)

*Description:* (21-1) Any and all expenses and liabilities incurred in connection with the Mowbray Action.
*Remarks:*

---

*Creditor:*      (19580568)
One Embarcadero Center Venture
c/o Douglas B. Rosner, Goulston & Storrs
PC
400 Atlantic Avenue
Boston, MA 02110

**Claim No: 22**
*Original Filed Date*: 01/25/2022
*Original Entered Date*: 01/25/2022

*Status:*
*Filed by:* CR
*Entered by:* Admin
*Modified:*

  Amount  claimed: $233819.97
  Secured claimed:  $15556.31
  Priority  claimed:  $32881.12

*History:*

Details   ⬤   22-1   01/25/2022 Claim #22 filed by One Embarcadero Center Venture, Amount claimed: $233819.97 (Admin)

*Description:*
*Remarks:*

---

*Creditor:*      (19612693)
Cort Business Services
5432 West Chester Rd
West Chester, OH 45069

**Claim No: 23**
*Original Filed Date*: 03/09/2022
*Original Entered Date*: 03/09/2022

*Status:*
*Filed by:* CR
*Entered by:* Bryan Dozier
*Modified:*

  Amount  claimed: $620.75
  Secured claimed:   $0.00

*History:*

Details   ⬤   23-1   03/09/2022 Claim #23 filed by Cort Business Services, Amount claimed: $620.75 (Dozier, Bryan)

*Description:*
*Remarks:*

---

*Creditor:*      (19630428)
City and County of San Francisco Tax
Collector
Bureau of Delinquent Revenue
PO Box 7027
San Francisco, CA 94120-7027

**Claim No: 24**
*Original Filed Date*: 03/17/2022
*Original Entered Date*: 03/17/2022

*Status:*
*Filed by:* CR
*Entered by:* Admin
*Modified:*

  Amount claimed: $2246.50
  Priority  claimed: $2246.50

*History:*

Details   ⬤   24-1   03/17/2022 Claim #24 filed by City and County of San Francisco Tax Collector, Amount claimed:
$2246.50 (Admin)

*Description:*
*Remarks:* (24-1) Account Number (last 4 digits):4495

*Creditor:*   (19630428)
City and County of San Francisco Tax
Collector
Bureau of Delinquent Revenue
PO Box 7027
San Francisco, CA 94120-7027

**Claim No: 25**
*Original Filed Date:* 04/14/2022
*Original Entered Date:* 04/14/2022

*Status:*
*Filed by:* CR
*Entered by:* Admin
*Modified:*

  Amount claimed: $882.42
  Priority  claimed: $882.42

*History:*

  Details  ⬤  25-1   04/14/2022 Claim #25 filed by City and County of San Francisco Tax Collector, Amount claimed: $882.42
                    (Admin)

*Description:*
*Remarks:* (25-1) Account Number (last 4 digits):4495

## Claims Register Summary

**Case Name:** Flexible Funding, Ltd. Liability Co.
**Case Number:** 21-42215-mxm11
**Chapter:** 11
**Date Filed:** 09/19/2021
**Total Number Of Claims:** 25

| Total Amount Claimed* | $26324009.85 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $2135593.10 | |
| **Priority** | $54620.04 | |
| **Administrative** | | |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/28/2023 11:27:22 | | | |
| **PACER Login:** | cds60651 | **Client Code:** | |
| **Description:** | Claims Register | **Search Criteria:** | 21-42215-mxm11 Filed or Entered From: 1/1/1900 Filed or Entered To: 4/28/2023 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |